1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

2

3

4   UNITED STATES OF AMERICA,          )
                                       ) Case No. 1:19-CR-00125A
5                                      )            (RJA)(JJM)
                    Plaintiff,         )
6                                      )
    vs.                                ) November 5th, 2019
7                                      )
    LAMARIO MILLS,                     )
8                                      )
                    Defendant.         )
9

10

**TRANSCRIPT OF ORAL ARGUMENT**

11      **BEFORE THE HONORABLE RICHARD J. ARCARA**
          **SENIOR UNITED STATES DISTRICT JUDGE**

12

13

<u>APPEARANCES:</u>

14

For the Plaintiff:   JAMES P. KENNEDY, JR., ESQ.
15                     UNITED STATES ATTORNEY
                       BY:  JEREMIAH LENIHAN, ESQ.
16                     ASSISTANT UNITED STATES ATTORNEY
                       138 Delaware Avenue
17                     Buffalo, NY 14202

18   For the Defendant:   LAW OFFICE OF THOMAS EOANNOU,
                          BY:  THOMAS EOANNOU, ESQ.
19                        484 Delaware Avenue,
                          Buffalo, NY 14202
20

    Court Reporter:      MEGAN E. PELKA, RPR
21                       Robert H. Jackson Courthouse
                         2 Niagara Square
22                       Buffalo, NY 14202

23

24

25

09:58AM   1          THE CLERK:  Criminal action 2019-125A.  United States

09:58AM   2   v. Lamario Mills.  Oral argument on government's motion to

09:58AM   3   revoke release order of Magistrate Judge Jeremiah J. McCarthy.

09:58AM   4   Counsel, please state your name and the party you represent

09:58AM   5   for the record.

09:58AM   6          MR. LENIHAN:  Good morning, Your Honor.  Jerry

09:58AM   7   Lenihan on behalf of the United States.

09:58AM   8          MR. EOANNOU:  Good morning, Judge.  Tom Eoannou on

09:58AM   9   behalf of Lamario Mills.

09:58AM   10          THE COURT:  Good morning, Mr. Lenihan.

09:58AM   11          MR. LENIHAN:  Thank you, Your Honor.  Your Honor, the

09:59AM   12   government has filed a brief.  We have been before this Court

09:59AM   13   previously.  I'm not going to go into too much detail on the

09:59AM   14   3142(g) factors, but I do want to note, regarding the nature

09:59AM   15   and circumstance of this offense, this was a large-scale,

09:59AM   16   open-air drug market in which the defendant had a leadership

09:59AM   17   role in that open-air drug market.

09:59AM   18          The weight of the evidence is exceedingly strong, in

09:59AM   19   that law enforcement conducted a total of 27 controlled

09:59AM   20   purchases of cocaine base; 12 of which were from the

09:59AM   21   defendant; 11 of those 12 controlled purchases were captured

09:59AM   22   on audio and video recording.  In addition, there's pole cam

09:59AM   23   footage that places the defendant in the area of 67 and 76

09:59AM   24   Townsend on a continuous basis.

09:59AM   25          The Court, in its prior decision remanding this case

09:59AM   1   back to Judge McCarthy, noted that there were certain

09:59AM   2   uncharged conduct in the case that the government has

09:59AM   3   proffered.  And that namely surrounds the evidence that was

10:00AM   4   recovered from the defendant's residence at 1985 Delaware

10:00AM   5   Avenue, apartment 1G.  And that was on June 18th, 2019.

10:00AM   6          The Grand Jury has returned a superseding indictment.

10:00AM   7   Instead of uncharged, it's now charged conduct.  The defendant

10:00AM   8   was in possession of 745 grams of cocaine that was placed

10:00AM   9   inside of a dishwasher.  Next to the dishwasher were tools

10:00AM  10   used to take cocaine and cook it into cocaine base, such as

10:00AM  11   spatulas, tongs, pots and pans.

10:00AM  12          There was also $35,000 that was recovered from inside

10:00AM  13   the defendant's residence.  The street value of $35,000 of --

10:00AM  14   in cash is over 1,000 kilos of cocaine.  So, it is now -- the

10:00AM  15   defendant is charged with not just one, two, but three drug

10:00AM  16   premises that he's maintaining; 76 Townsend, 67 Townsend and

10:00AM  17   his residence.  The case against the defendant is exceedingly

10:00AM  18   strong.  It does not get much stronger, based on the evidence

10:01AM  19   that we have developed in this case.

10:01AM  20          Regarding the history and characteristics of this

10:01AM  21   defendant, he's been arrested 10 times.  He has one felony

10:01AM  22   conviction, one misdemeanor conviction.  He's been arrested in

10:01AM  23   the area of 67 and 76 Townsend numerous times.  He was

10:01AM  24   arrested during the execution of a search warrant in June of

10:01AM  25   2017 where law enforcement recovered a hand gun.  The

10:01AM 1  defendant was excluded as a DNA contributor of that handgun,

10:01AM 2  but it still shows his proximity to that area.

10:01AM 3       The defendant lied to probation when he was asked

10:01AM 4  where he lived.  He was asked where he lived and he said he

10:01AM 5  lived at 65 James John [sic] Audubon Drive.  There is no 65

10:01AM 6  John James Audubon Drive.  It's not a residence.  It looks

10:01AM 7  like it's a complex where individuals go to work.

10:01AM 8       The defendant was living at 1985 Delaware Avenue in

10:01AM 9  Buffalo, New York.  He lied to the probation department.  He

10:02AM 10 also lied about how much money was recovered from inside his

10:02AM 11 residence.  He stated that he had between 6 and 7,000, when,

10:02AM 12 in fact, he had $35,000.

10:02AM 13      And I mentioned this in my brief and I think it's

10:02AM 14 important to point out that this Court has taken lies that

10:02AM 15 have been proffered in front of a Court seriously in *State vs.*

10:02AM 16 *Williams*, stating that if the defendant is willing to lie to a

10:02AM 17 Court, then a defendant does not appreciate the risk and the

10:02AM 18 consequences of being released and not committing more crimes,

10:02AM 19 making him a danger to the community and a flight risk.

10:02AM 20      On top of that, Your Honor, we have information that

10:02AM 21 the defendant has been unemployed.  He mentioned that he's a

10:02AM 22 landscaper.  We don't have any evidence to verify that he's

10:02AM 23 been a landscaper.  All the evidence points that he's a large-

10:02AM 24 scale drug trafficker.  And I mentioned in our brief about how

10:02AM 25 we can prove the leadership enhancement and the amount of

10:03AM  1   proceeds that was recovered from the defendant.  $35,000 is a

10:03AM  2   factor for this Court to consider, as it is a large share of

10:03AM  3   the fruits of the crime.

10:03AM  4        The defendant was also in 76 Townsend on numerous

10:03AM  5   occasions.  A new piece of evidence that we have recovered,

10:03AM  6   that I have turned over to defense counsel, is when law

10:03AM  7   enforcement executed the search warrant of 76 Townsend on

10:03AM  8   June 18, 2019, they found a Home Depot receipt in the name of

10:03AM  9   Mario Mills.

10:03AM 10        We sent out a subpoena to Home Depot and we learned

10:03AM 11   that the defendant purchased approximately $1,300 worth of

10:03AM 12   material for 76 Townsend, things like pavers and fencing.  So

10:03AM 13   what does that tell you?  That tells you that this defendant

10:03AM 14   controlled that premise.  And that premise is one of the

10:03AM 15   central locations in this drug trafficking organization.  So,

10:03AM 16   it shows his control over a central tenant of the -- of this

10:03AM 17   organization, this location.  That helps prove his leadership

10:04AM 18   role.

10:04AM 19        We also have evidence that the defendant was yelling

10:04AM 20   at lookouts on one occasion, that he was yelling to a lookout

10:04AM 21   that they had not alerted him that a C District Buffalo Police

10:04AM 22   car was around the corner.  And the defendant was also yelling

10:04AM 23   at co-defendant Vernon James that his count was off; that

10:04AM 24   Vernon James owed money to Lamario Mills.

10:04AM 25        All of this together and in addition to what I have

10:04AM   1   referenced in our brief, help demonstrate the defendant is

10:04AM   2   deserving of a leadership enhancement; that the defendant was

10:04AM   3   in control or was at least a leader, an organizer, supervisor,

10:04AM   4   manager in this large-scale drug trafficking network.

10:04AM   5         Based on all that, Judge, when you look at the

10:04AM   6   3142(g) factors, when you take a look at the presumption that

10:04AM   7   applies in this case, the government maintains that the

10:04AM   8   defendant is both a flight risk and that he is a danger to the

10:04AM   9   community and we ask the Court to revoke Judge McCarthy's

10:04AM   10   order.

10:04AM   11         MR. EOANNOU:  Judge, he's not a flight risk.  And

10:05AM   12   he's not a danger to the community.

10:05AM   13         THE COURT:  How can you say he's not a danger to the

10:05AM   14   community, based on what the government has just said?

10:05AM   15         MR. EOANNOU:  Very, very, very simply --

10:05AM   16         THE COURT:  He's charged in 19 counts.

10:05AM   17         MR. EOANNOU:  Very simply, Judge.

10:05AM   18         THE COURT:  I'm interested to hear.

10:05AM   19         MR. EOANNOU:  I can, because they started

10:05AM   20   investigating for nine months, from the point they made their

10:05AM   21   first buy to the last buy and left him out there making less

10:05AM   22   than $100 buys.

10:05AM   23         THE COURT:  What does that prove?

10:05AM   24         MR. EOANNOU:  Well, exactly what Judge McCarthy said

10:05AM   25   and he said that it undercuts the government's argument.  It

| | | |
|---|---|---|
| 10:05AM | 1 | undercuts the government's -- |
| 10:05AM | 2 | THE COURT:  How does it -- |
| 10:05AM | 3 | MR. EOANNOU:  Because if you're a danger to the |
| 10:05AM | 4 | community, go and arrest him.  You don't let him make -- |
| 10:05AM | 5 | THE COURT:  That is a bogus argument. |
| 10:05AM | 6 | MR. EOANNOU:  It's not a bogus argument.  You don't |
| 10:05AM | 7 | have to make 11 -- |
| 10:05AM | 8 | THE COURT:  I'm not persuaded by that at all. |
| 10:05AM | 9 | MR. EOANNOU:  Well, Judge, let me go through it. |
| 10:05AM | 10 | THE COURT:  All right. |
| 10:05AM | 11 | MR. EOANNOU:  Let me go through it. |
| 10:05AM | 12 | THE COURT:  Go through it, but I'm not persuaded by |
| 10:05AM | 13 | what you're arguing.  You need a better reason. |
| 10:05AM | 14 | MR. EOANNOU:  Judge, he was only -- he's never been |
| 10:05AM | 15 | to jail.  He was on probation.  He was supervised for five |
| 10:05AM | 16 | years and not one single incident of being a danger to the |
| 10:05AM | 17 | community, not one arrest. |
| 10:05AM | 18 | But let me go further, because we have had this |
| 10:06AM | 19 | argument like, three times.  He was arrested June 18th.  And |
| 10:06AM | 20 | they go before Judge McCarthy and they say the same thing they |
| 10:06AM | 21 | said today, that he's a risk of flight and a danger to the |
| 10:06AM | 22 | community.  The Judge says, I'm going to release him, $5,000 |
| 10:06AM | 23 | cash bond, $1,500 apiece from the three individuals who are |
| 10:06AM | 24 | here today, a $15,000 signature bond and electronic |
| 10:06AM | 25 | monitoring. |

10:06AM    1          The government moves for a stay.  They don't like the

10:06AM    2     decision.  They come in here, you send it back and say to the

10:06AM    3     court, the lower court, prepare a statement of reasons.  We --

10:06AM    4          THE COURT:  Obviously, I wasn't satisfied with the

10:06AM    5     reasons they gave.

10:06AM    6          MR. EOANNOU:  Correct.

10:06AM    7          THE COURT:  So, that's why I sent it back.

10:06AM    8          MR. EOANNOU:  I understand that, which is certainly

10:06AM    9     the Court's prerogative.

10:06AM   10          THE COURT:  Thank you.

10:06AM   11          MR. EOANNOU:  We go back in front of Judge McCarthy.

10:06AM   12     Now, we substantially increase what we post for bail to

10:06AM   13     assure --

10:06AM   14          THE COURT:  What does the amount of bail have to do

10:06AM   15     with whether or not a person is a danger to the community?  I

10:06AM   16     don't get that.

10:06AM   17          MR. EOANNOU:  Well, the amount of bail --

10:07AM   18          THE COURT:  What does that have to do about danger to

10:07AM   19     the community?

10:07AM   20          MR. EOANNOU:  When the sister puts up her house that

10:07AM   21     she lives in at 95 Furhmann and Judge McCarthy tells her if

10:07AM   22     he's a danger to the community or commits another crime, I'm

10:07AM   23     taking the house that you live in, that should suffice to show

10:07AM   24     the Court that the family has confidence in him, coupled with

10:07AM   25     the fact that while he was on five years probation he never

10:07AM   1   had a problem being a danger to the community.  On top of the

10:07AM   2   fact that the government, for 11 months, didn't say, let's go

10:07AM   3   grab him off the street -- or nine months -- they left him out

10:07AM   4   there.

10:07AM   5            THE COURT:  Why would the government -- if they're

10:07AM   6   conducting a criminal investigation, the person is -- has been

10:07AM   7   involved in criminal activity.  Your argument is that they

10:07AM   8   should arrest him right away.  I don't like that argument at

10:07AM   9   all.

10:07AM  10            MR. EOANNOU:  No.  My argument isn't arrest him right

10:07AM  11   away.  My argument is, you had controlled buy after controlled

10:07AM  12   buy after controlled buy.  You don't need to wait nine months.

10:07AM  13   Nine months is --

10:07AM  14            THE COURT:  Why do you -- I don't understand the

10:07AM  15   logic of that argument.

10:07AM  16            MR. EOANNOU:  Because if he's a danger to the

10:08AM  17   community and he's violent and he's selling drugs --

10:08AM  18            THE COURT:  That's your position.  That's not the

10:08AM  19   government's position.  They want to have a thorough

10:08AM  20   investigation.  So, why would they stop the investigation

10:08AM  21   earlier than they think is worthy to be stopped?  I don't get

10:08AM  22   the connection in your argument.

10:08AM  23            MR. EOANNOU:  They say he's an organizer, supervisor

10:08AM  24   or leader.

10:08AM  25            THE COURT:  Well, that's up for the court proceeding.

10:08AM   1          MR. EOANNOU:  And they have controlled buys on video,

10:08AM   2     according to them.  That was --

10:08AM   3          THE COURT:  Have you seen the controlled buys?

10:08AM   4          MR. EOANNOU:  Of course I've seen the --

10:08AM   5          THE COURT:  Is there something fraudulent about them?

10:08AM   6          MR. EOANNOU:  No.

10:08AM   7          THE COURT:  Is the evidence fairly strong?

10:08AM   8          MR. EOANNOU:  I would agree that the evidence in this

10:08AM   9     case is fairly strong and that's only one factor for the Court

10:08AM  10     to consider.

10:08AM  11          THE COURT:  I agree.

10:08AM  12          MR. EOANNOU:  So, when you go back and see what we

10:08AM  13     proposed to Judge McCarthy, even though probation set a

10:08AM  14     $10,000 secured bond twice, probation has inspected the home.

10:08AM  15     Probation, from day one, has said release him on 10,000.  We

10:08AM  16     came in and this time said home incarceration.  There goes

10:08AM  17     your argument for danger to the community because he'll be

10:09AM  18     inside, in a house that his sister will live in.

10:09AM  19          THE COURT:  But that only goes so far.  If you're in

10:09AM  20     a house -- you know, I have always had a little problem with

10:09AM  21     home detention as eliminating a danger to the community.  I

10:09AM  22     don't quite appreciate the fact that if someone is on home

10:09AM  23     detention that somehow or other that removes the persons

10:09AM  24     involved in what may be criminal activities.

10:09AM  25          MR. EOANNOU:  Well, they're not out on the street.

U.S. v. LAMARIO MILLS  --  ORAL ARGUMENT  --  11/05/19

| | | |
|---|---|---|
| 10:09AM | 1 | THE COURT:  Well, that's neither here nor there.  So |
| 10:09AM | 2 | what? |
| 10:09AM | 3 | MR. EOANNOU:  Well, it is, because a lot of the |
| 10:09AM | 4 | crimes in this particular case goes in favor of the defense. |
| 10:09AM | 5 | Because in this particular case, he wasn't doing anything out |
| 10:09AM | 6 | of 95 Furhmann.  And he was doing it at other houses, which he |
| 10:09AM | 7 | wouldn't have -- |
| 10:09AM | 8 | THE COURT:  Why am I having trouble with your |
| 10:09AM | 9 | argument?  I'm having trouble recognizing the value of your |
| 10:09AM | 10 | argument. |
| 10:09AM | 11 | MR. EOANNOU:  Okay.  Let me say this, Judge. |
| 10:09AM | 12 | THE COURT:  All right.  Go ahead.  Try another way, |
| 10:09AM | 13 | please. |
| 10:09AM | 14 | MR. EOANNOU:  Home detention, I understand you're |
| 10:09AM | 15 | argument -- |
| 10:09AM | 16 | THE COURT:  Okay. |
| 10:09AM | 17 | MR. EOANNOU:  -- with electronic monitoring. |
| 10:10AM | 18 | THE COURT:  Okay. |
| 10:10AM | 19 | MR. EOANNOU:  Instead of a $10,000 secured bond, as |
| 10:10AM | 20 | recommended by probation twice, $50,000.  We had the house |
| 10:10AM | 21 | appraised by a certified appraiser.  We showed that the taxes |
| 10:10AM | 22 | were paid.  We did everything we could to show that there was |
| 10:10AM | 23 | more then 50,000 in equity.  Also in cash, 1,500 to 2,500 |
| 10:10AM | 24 | apiece, as you know from the decision and order from McCarthy |
| 10:10AM | 25 | and three separate signature bonds at 15,000 apiece. |

| | | |
|---|---|---|
| 10:10AM | 1 | Now, what the Court said below was the new charges |
| 10:10AM | 2 | are not different in substance from the original conduct. |
| 10:10AM | 3 | Basically, they -- |
| 10:10AM | 4 | THE COURT:  Is that true? |
| 10:10AM | 5 | MR. EOANNOU:  That's what the lower Court said, yes. |
| 10:10AM | 6 | It's a quote. |
| 10:10AM | 7 | THE COURT:  No.  No.  Is that true? |
| 10:10AM | 8 | MR. LENIHAN:  It's the uncharged conduct that we |
| 10:10AM | 9 | previously proffered. |
| 10:10AM | 10 | THE COURT:  Now it's the charged? |
| 10:10AM | 11 | MR. LENIHAN:  Now it's charged. |
| 10:10AM | 12 | THE COURT:  It's little different, isn't it, Mr. -- |
| 10:10AM | 13 | MR. EOANNOU:  No.  The Court -- no.  He was charged |
| 10:10AM | 14 | when we argued the second argument in front of Judge |
| 10:10AM | 15 | Magistrate McCarthy. |
| 10:10AM | 16 | THE COURT:  I'm not following you. |
| 10:10AM | 17 | MR. EOANNOU:  We went down.  There was a superseding |
| 10:10AM | 18 | indictment.  We reargued that the Court was well aware of the |
| 10:11AM | 19 | new charges.  And the Court said the new charges are not |
| 10:11AM | 20 | different in substance from the original conduct. |
| 10:11AM | 21 | THE COURT:  Well, they weren't charged before. |
| 10:11AM | 22 | MR. EOANNOU:  Right.  And when they -- |
| 10:11AM | 23 | THE COURT:  Is there a difference? |
| 10:11AM | 24 | MR. EOANNOU:  Judge, when they were charged -- |
| 10:11AM | 25 | THE COURT:  Do you think there's a difference when |

10:11AM  1   there's information about criminal conduct versus being

10:11AM  2   charged with that conduct?  Do you think there's any

10:11AM  3   difference?

10:11AM  4        MR. EOANNOU:  Yes.  And Judge McCarthy heard it.

10:11AM  5        THE COURT:  And?

10:11AM  6        MR. EOANNOU:  And his quote was the new charges are

10:11AM  7   not different in substance from the original conduct.

10:11AM  8        THE COURT:  Hold it right there.  And you agree with

10:11AM  9   that?

10:11AM  10       MR. EOANNOU:  It's in his decision, Judge.

10:11AM  11       MR. LENIHAN:  We proffered exactly -- essentially

10:11AM  12  what I proffered today, is that on the date of the defendant's

10:11AM  13  arrest on June 18, 2019, he was in possession of cocaine,

10:11AM  14  cash.  That was uncharged when we initially proffered in front

10:11AM  15  of Judge McCarthy and when we came before Your Honor and Your

10:11AM  16  Honor heard the appeal, we have taken that conduct from

10:11AM  17  uncharged to now charged.

10:11AM  18       THE COURT:  You don't think there's any difference?

10:12AM  19       MR. EOANNOU:  No.  They're basically --

10:12AM  20       THE COURT:  Let's put it this way, Mr. Eoannou.  If

10:12AM  21  you have uncharged conduct that may or may not be relevant to

10:12AM  22  a different issue, maybe of sentencing --

10:12AM  23       MR. EOANNOU:  Right.

10:12AM  24       THE COURT:  -- versus charged conduct, which

10:12AM  25  obviously, if he's convicted of it, would have a significant

10:12AM   1   effect on a person's proposed sentence.

10:12AM   2           MR. EOANNOU:  It's still a five --

10:12AM   3           THE COURT:  So, there's a difference.

10:12AM   4           MR. EOANNOU:  Yes.  It's still a five-year mandatory

10:12AM   5   minimum.  And when Judge McCarthy heard that exact same

10:12AM   6   argument from the government, his written decision was that

10:12AM   7   the new charges are not different in substance from the

10:12AM   8   original conduct and was not a basis to detain someone.

10:12AM   9   And --

10:12AM  10           THE COURT:  I don't quite understand that argument,

10:12AM  11   to be honest with you.  I mean, he may have said that, but I'm

10:12AM  12   having trouble understanding it.

10:12AM  13           MR. EOANNOU:  Basically, it's Counts 35 through 39.

10:12AM  14   They added sales counts that they knew about for nine months.

10:13AM  15   And then they talked about --

10:13AM  16           THE COURT:  What's the significance with the nine

10:13AM  17   months?

10:13AM  18           MR. EOANNOU:  Again, Judge, if the government thought

10:13AM  19   that he was such a danger, they wouldn't be leaving someone

10:13AM  20   out on the street.

10:13AM  21           THE COURT:  Mr. Eoannou, you are an experienced

10:13AM  22   criminal defense lawyer.  When they're conducting -- the

10:13AM  23   government is conducting a criminal investigation, they want

10:13AM  24   to make sure, I assume, that it's thorough.  They're not under

10:13AM  25   any time requirement.

10:13AM     1         MR. EOANNOU:  And when a person is dangerous, they

10:13AM     2   get him off the street.

10:13AM     3         THE COURT:  That's not true.  What do you -- how can

10:13AM     4   you say that?

10:13AM     5         MR. EOANNOU:  They leave dangerous people on the

10:13AM     6   street, Judge?  I don't think so.

10:13AM     7         THE COURT:  Well, if the investigation is complete,

10:13AM     8   yes, they'll charge him.  If it's not complete, they won't.

10:13AM     9         MR. EOANNOU:  Well, if he's the top guy and he has

10:13AM    10   hand-to-hand sales --

10:13AM    11         THE COURT:  That, I don't have any idea.

10:13AM    12         MR. EOANNOU:  That's my point.  If he's the head guy,

10:13AM    13   your investigation, you got the big fish, it's complete.  And

10:13AM    14   you got him on video making a sale, not making one, making

10:13AM    15   ten, I think your investigation is complete.  And that's --

10:13AM    16         THE COURT:  That's not your decision.  That's up to

10:13AM    17   the government to make that decision.

10:13AM    18         MR. EOANNOU:  But it's my argument in terms of how

10:14AM    19   dangerous would he have been if they had left him out there

10:14AM    20   and made one buy after another.  And by the way, they talk

10:14AM    21   about this big conspiracy.  They're $100 buys.  They made 27

10:14AM    22   buys in this case, for what reason I don't know.  You're more

10:14AM    23   experienced than I am, but normally they don't make 27; 35

10:14AM    24   grams total.  That's how big this drug conspiracy is.  So --

10:14AM    25         THE COURT:  How much money was found in the house?

10:14AM   1          MR. LENIHAN:  $35,000.

10:14AM   2          THE COURT:  Does the defendant work?

10:14AM   3          MR. LENIHAN:  Not to the government's knowledge.

10:14AM   4          THE COURT:  Do you have 35,000 in your house,

10:14AM   5  Mr. Eoannou?

10:14AM   6          MR. EOANNOU:  No, Judge.  If I did, my wife would

10:14AM   7  take it.

10:14AM   8          THE COURT:  I don't think I have ever seen $35,000.

10:14AM   9  I don't think I have ever seen $35,000 in cash, at least as it

10:14AM  10  relates to me.

10:14AM  11          MR. EOANNOU:  My point --

10:14AM  12          THE COURT:  You think that is a normal way, that

10:14AM  13  people will hold $35,000 in a house?

10:14AM  14          MR. EOANNOU:  No, Judge, but if he's working off the

10:14AM  15  books, that's not --

10:14AM  16          THE COURT:  What was he doing?  What kind of work was

10:14AM  17  he doing?

10:14AM  18          MR. EOANNOU:  He is a landscaper, Judge.  He does do

10:15AM  19  landscaping and most landscapers want to be paid off the

10:15AM  20  books.  That's just the nature of the beast.

10:15AM  21          THE COURT:  How can you say that?  Most landscapers

10:15AM  22  are corrupt?

10:15AM  23          MR. EOANNOU:  No, Judge.  I don't know what they do

10:15AM  24  when they give you cash, but I can tell you that landscapers

10:15AM  25  prefer to be paid in cash.

| | | |
|---|---|---|
| 10:15AM | 1 | THE COURT:  I have never paid a landscaper in cash. |
| 10:15AM | 2 | MR. EOANNOU:  I can tell you as -- |
| 10:15AM | 3 | THE COURT:  You have? |
| 10:15AM | 4 | MR. EOANNOU:  Many years.  No, Judge, but they have |
| 10:15AM | 5 | asked repeatedly. |
| 10:15AM | 6 | THE COURT:  Pardon me? |
| 10:15AM | 7 | MR. EOANNOU:  It's always -- in that type of |
| 10:15AM | 8 | business, Judge -- |
| 10:15AM | 9 | THE COURT:  How can you make that argument, that |
| 10:15AM | 10 | landscapers always want to be paid in cash? |
| 10:15AM | 11 | MR. EOANNOU:  I don't say always, Judge. |
| 10:15AM | 12 | THE COURT:  Okay. |
| 10:15AM | 13 | MR. EOANNOU:  I say, how can you make the argument |
| 10:15AM | 14 | that it's directly connected to the drugs?  You can't. |
| 10:15AM | 15 | THE COURT:  Well -- |
| 10:15AM | 16 | MR. EOANNOU:  He says he's a landscaper.  He's |
| 10:15AM | 17 | presumed innocent.  There's no direct linkage to -- |
| 10:15AM | 18 | THE COURT:  I agree with you.  He's presumed |
| 10:15AM | 19 | innocent. |
| 10:15AM | 20 | MR. EOANNOU:  -- the money and the drugs.  They can |
| 10:15AM | 21 | say that all they want; that all that money is drug money. |
| 10:15AM | 22 | They can't prove it.  And it's almost impossible, |
| 10:15AM | 23 | mathematically, when you think about it.  Over nine months, |
| 10:15AM | 24 | they got less than $3,500 in buys.  So, that makes it |
| 10:16AM | 25 | mathematically illogical unless he's been standing on that |

10:16AM  1  corner for 10 years.

10:16AM  2        THE COURT:  Give me the argument again.  I'm trying

10:16AM  3  to follow your argument.

10:16AM  4        MR. EOANNOU:  There is no proof -- direct proof it's

10:16AM  5  drug-related.  There is nothing illegal, per se, about having

10:16AM  6  cash in your house.  He has taken the position he is a

10:16AM  7  landscaper.  The logic in this case is that over nine months,

10:16AM  8  they got 27 buys equalling 35 grams at $100 a gram is

10:16AM  9  35 grams.  That would take 10 times the 9 months to get the

10:16AM  10  35,000, which is 90 months.

10:16AM  11        THE COURT:  So, you're saying that the $35,000 in

10:16AM  12  cash was related to his landscaping business?

10:16AM  13        MR. EOANNOU:  No.  I'm saying, Judge, it's not a

10:16AM  14  basis to detain him.  It's a factor to consider.  He's

10:16AM  15  presumed innocent.  And he's staked his claim that he is a

10:16AM  16  landscaper.  And the insignificant, small, street-level

10:17AM  17  sales --

10:17AM  18        THE COURT:  Explain one more thing.

10:17AM  19        MR. EOANNOU:  Sure.

10:17AM  20        THE COURT:  You're saying he's presumed innocent.

10:17AM  21  And there's no question about that.  And the government will

10:17AM  22  have to prove beyond a reasonable doubt all these charges in

10:17AM  23  the trial.  No question about it.  What does that have to do

10:17AM  24  with the argument we're making here today?

10:17AM  25        MR. EOANNOU:  The argument I am making today is

10:17AM   1    that --

10:17AM   2         THE COURT:  He's presumed -- because your client has

10:17AM   3    indicated to you, apparently, that he's in the landscaping

10:17AM   4    business, that therefore that is evidence that he is in the

10:17AM   5    landscaping business.  That's your argument?

10:17AM   6         MR. EOANNOU:  No.  I am saying --

10:17AM   7         THE COURT:  Do you have any evidence at all that he's

10:17AM   8    in the landscaping business?

10:17AM   9         MR. LENIHAN:  Zero.

10:17AM   10        THE COURT:  Does he have any equipment that would

10:17AM   11   show that like trucks, bulldozers, hoes, rakes, flowers,

10:17AM   12   plants, whatever else you have in the landscaping business?

10:17AM   13        MR. LENIHAN:  Absolutely none.

10:17AM   14        MR. EOANNOU:  They wouldn't know that, Judge.  And

10:17AM   15   they wouldn't know if he worked for a landscaper off the books

10:17AM   16   or whatever.

10:17AM   17        THE COURT:  How would you -- wait a minute.  If you

10:17AM   18   are in a landscaping business -- were you at his house or his

10:18AM   19   place of business?  Allegedly he has one?

10:18AM   20        MR. LENIHAN:  No.

10:18AM   21        THE COURT:  Were you at his house?

10:18AM   22        MR. LENIHAN:  We were at his residence.

10:18AM   23        THE COURT:  Was there any evidence of landscaping

10:18AM   24   business?

10:18AM   25        MR. LENIHAN:  Not to my knowledge.

U.S. v. LAMARIO MILLS  --  ORAL ARGUMENT  --  11/05/19

19

| 10:18AM | 1 | THE COURT:  Was there any indication that he has an |
| 10:18AM | 2 | office?  Was there any place where he had like, supplies for |
| 10:18AM | 3 | landscaping? |
| 10:18AM | 4 | MR. LENIHAN:  What we do know is that the |
| 10:18AM | 5 | defendant -- |
| 10:18AM | 6 | THE COURT:  Do you have any evidence at all that |
| 10:18AM | 7 | there's an establishment known as a landscaping business? |
| 10:18AM | 8 | MR. EOANNOU:  Judge, he's only told me he's worked in |
| 10:18AM | 9 | the landscaping business. |
| 10:18AM | 10 | THE COURT:  Worked in the landscaping business? |
| 10:18AM | 11 | MR. EOANNOU:  Correct.  That's all I know. |
| 10:18AM | 12 | THE COURT:  $35,000 in cash in the house? |
| 10:18AM | 13 | MR. EOANNOU:  Right.  And the government seized it. |
| 10:18AM | 14 | So, there goes the risk of flight argument with that. |
| 10:18AM | 15 | THE COURT:  What does that have to do with risk of |
| 10:18AM | 16 | flight? |
| 10:18AM | 17 | MR. EOANNOU:  Because he no longer has the funds now |
| 10:18AM | 18 | to flee because the government has his money. |
| 10:18AM | 19 | THE COURT:  You can get in a car and drive somewhere. |
| 10:18AM | 20 | MR. EOANNOU:  With no money, how far can he get? |
| 10:18AM | 21 | Especially if you're on -- |
| 10:18AM | 22 | THE COURT:  I don't know. |
| 10:18AM | 23 | MR. EOANNOU:  -- if you're on home detention with an |
| 10:18AM | 24 | electronic monitor, you're not going to get very far with no |
| 10:18AM | 25 | money, an electronic monitor and home detention.  And that's |

10:19AM   1   why -- you know, the Second Circuit has said, Judge, that in

10:19AM   2   terms of detention, only a limited group of defendants should

10:19AM   3   be denied it, pending bail, because they're presumed innocent.

10:19AM   4   Now, there's a lot of factors that they're saying.

10:19AM   5        We are rebutting that.  We are rebutting that with

10:19AM   6   the family's home.  The sister is a licensed practical nurse,

10:19AM   7   works at ECMC in a totally legitimate job.  She's here, all

10:19AM   8   ready and willing to put the cash up, already signed the

10:19AM   9   $15,000 signature bond.  His brother-in-law, Alonzo Alexander,

10:19AM  10   is here and he works, he runs a 100-unit apartment complex.

10:19AM  11   He also lives in that house, which he would lose.  He's

10:19AM  12   willing to put up the money and the $15,000 signature bond.

10:19AM  13   His fiancée, Deandre Parker, she works as a health care aide

10:19AM  14   and she's willing to sign --

10:19AM  15        THE COURT:  You're talking about risk of flight.  I'm

10:19AM  16   more focused here on danger to the community.

10:19AM  17        MR. EOANNOU:  Okay.  The argument that shows he is

10:20AM  18   not a danger to the community is that he's been on probation

10:20AM  19   for five years with supervised -- without a single violation,

10:20AM  20   without a single problem in the community.  There is no claim

10:20AM  21   of violence here.  I understand the drug argument.

10:20AM  22        There are no weapons in this case.  This is a five-

10:20AM  23   year mandatory minimum case with one felony conviction that he

10:20AM  24   didn't even go to jail for.  In the back is an entire family

10:20AM  25   willing to put up all the assets that they have to show this

| | | |
|---|---|---|
| 10:20AM | 1 | Court that they believe in him.  So, that -- |
| 10:20AM | 2 | THE COURT:  How many times has he been arrested, |
| 10:20AM | 3 | Mr. Lenihan? |
| 10:20AM | 4 | MR. EOANNOU:  He's been arrested 11 times.  Nine |
| 10:20AM | 5 | times they've been dismissed.  Most of the times he's been |
| 10:20AM | 6 | arrested in groups of people and that should not be held |
| 10:20AM | 7 | against him where there was a gun.  His DNA wasn't on it.  I |
| 10:20AM | 8 | think nine people were arrested in that case and it was thrown |
| 10:20AM | 9 | out immediately against Lamario. |
| 10:20AM | 10 | THE COURT:  Okay.  Now, Mr. Lenihan indicated that he |
| 10:20AM | 11 | lied to the probation officer. |
| 10:20AM | 12 | MR. EOANNOU:  Judge, on the *Williams* case -- |
| 10:21AM | 13 | THE COURT:  Pardon me? |
| 10:21AM | 14 | MR. EOANNOU:  The *Williams* case -- which the |
| 10:21AM | 15 | government likes to cite -- in the *Williams* case, they told |
| 10:21AM | 16 | the Court, they said, look at, the mom just died and I spend |
| 10:21AM | 17 | 97 percent of my time taking care of the seven children. |
| 10:21AM | 18 | Okay?  That's complete deceit on the Court.  Here, he does |
| 10:21AM | 19 | stay at his mother's sometimes and he didn't want to |
| 10:21AM | 20 | incriminate himself and I get that.  There was money at the |
| 10:21AM | 21 | house -- |
| 10:21AM | 22 | THE COURT:  You lie to the probation office and in |
| 10:21AM | 23 | your world that's okay? |
| 10:21AM | 24 | MR. EOANNOU:  No, it's not okay, but it's not |
| 10:21AM | 25 | *Williams*. |

10:21AM    1          THE COURT:  Isn't not what?

10:21AM    2          MR. EOANNOU:  It's not straight-up deceit to the

10:21AM    3   Court that I've got -- my wife is dead and I've got kids that

10:21AM    4   will be homeless.  That's not what he said.  He didn't want

10:21AM    5   them to go to his house.

10:21AM    6          THE COURT:  What was the question that was asked of

10:21AM    7   him by the probation office and what was his answer?

10:21AM    8          MR. LENIHAN:  Where do you reside?  His answer was

10:21AM    9   65 John James Audubon Drive.

10:21AM   10          THE COURT:  What is there?

10:21AM   11          MR. LENIHAN:  An office complex.

10:21AM   12          MR. EOANNOU:  He gave the wrong address.  His mother

10:21AM   13   lives on John James Audubon Parkway and he does stay there

10:21AM   14   sometimes.  I have confirmed it with the family.

10:22AM   15          THE COURT:  It's an office complex.  She lives in an

10:22AM   16   office complex?

10:22AM   17          MR. EOANNOU:  No.  He gave the wrong address.  He

10:22AM   18   wasn't sure of the address.

10:22AM   19          THE COURT:  How do you know that?

10:22AM   20          MR. EOANNOU:  I asked Tanisha when they were in my

10:22AM   21   office.

10:22AM   22          THE COURT:  It's an office complex.

10:22AM   23          MR. EOANNOU:  No -- the address that he gave us, but

10:22AM   24   the mom does live on John James Audubon Parkway.  There's a

10:22AM   25   housing development over there.

10:22AM   1          THE COURT:  You don't think that's significant?

10:22AM   2          MR. EOANNOU:  Not significant enough to take a man's

10:22AM   3   liberty, Judge.

10:22AM   4          THE COURT:  You've got a lot of factors here, other

10:22AM   5   than that.

10:22AM   6          MR. EOANNOU:  Right.  There are a lot of factors.

10:22AM   7   And we -- that's why Magistrate McCarthy wisely said, okay,

10:22AM   8   I'm not going to release you on curfew, like he did

10:22AM   9   originally.  That's why we put up the house, to make sure the

10:22AM  10   Court was convinced there was a reason -- a set of conditions

10:22AM  11   that would reasonably assure his return to court and he

10:22AM  12   wouldn't be a danger to the community.  That's why three

10:22AM  13   people with good jobs said, okay, we'll put up the money,

10:22AM  14   we'll lose it if he violates, we'll put up our home and lose

10:22AM  15   it if he violates.

10:23AM  16          So, when you take the factors and you take what the

10:23AM  17   defense has put up and the fact that there should be -- the

10:23AM  18   Court should consider these combination of conditions, he

10:23AM  19   should be released, Judge.  It's a very stringent bail.  He

10:23AM  20   should be admonished and released.  And again, it's a five-

10:23AM  21   year mandatory minimum --

10:23AM  22          THE COURT:  I should -- I should admonish --

10:23AM  23          MR. EOANNOU:  Like Judge McCarthy said, if there's

10:23AM  24   any problem whatsoever, you'll be remanded, but he --

10:23AM  25          THE COURT:  But any problem whatsoever; what does

U.S. v. LAMARIO MILLS  --  ORAL ARGUMENT  --  11/05/19

24

| | | |
|---|---|---|
| 10:23AM | 1 | that mean? |
| 10:23AM | 2 | MR. EOANNOU:  Any violation of the terms and |
| 10:23AM | 3 | conditions of release.  And again, for five years, he didn't |
| 10:23AM | 4 | have a single problem as being a danger to the community when |
| 10:23AM | 5 | he was supervised. |
| 10:23AM | 6 | THE COURT:  He was under supervision by whom for five |
| 10:23AM | 7 | years? |
| 10:23AM | 8 | MR. LENIHAN:  The Erie County Probation Department. |
| 10:23AM | 9 | THE COURT:  A five-year period of probation.  That |
| 10:23AM | 10 | seems to be a relatively long period of probation. |
| 10:23AM | 11 | MR. LENIHAN:  It was.  And the -- |
| 10:23AM | 12 | THE COURT:  And what was the underlying charge that |
| 10:23AM | 13 | he was on probation for? |
| 10:23AM | 14 | MR. LENIHAN:  For possession of a controlled |
| 10:23AM | 15 | substance. |
| 10:23AM | 16 | THE COURT:  What kind of controlled substance? |
| 10:23AM | 17 | MR. LENIHAN:  I know it was a Class D felony.  I |
| 10:24AM | 18 | believe it was cocaine, but -- |
| 10:24AM | 19 | MR. EOANNOU:  And Judge, any felony in New York State |
| 10:24AM | 20 | under New York State law requires a minimum of a five-year |
| 10:24AM | 21 | probationary sentence.  He did the entire five years without a |
| 10:24AM | 22 | problem.  It's not a particularly long sentence -- |
| 10:24AM | 23 | THE COURT:  It's what? |
| 10:24AM | 24 | MR. EOANNOU:  It's the minimum sentence on a felony. |
| 10:24AM | 25 | MR. LENIHAN:  It appears, Judge, that he was arrested |

10:24AM   1   while he was on probation.  But according to the pretrial

10:24AM   2   services report, there was -- I don't have any information

10:24AM   3   that he was actually violated.  In most of those arrests,

10:24AM   4   he -- charges were dismissed.  He was arrested in 2009, 2010,

10:24AM   5   2012 and 2013 while he would have been on probation.

10:24AM   6           THE COURT:  He was arrested while he was on

10:24AM   7   probation?

10:24AM   8           MR. LENIHAN:  Yes.

10:24AM   9           MR. EOANNOU:  And he was not violated because the

10:24AM  10   charges were dismissed and that should not be held against

10:24AM  11   him.

10:24AM  12           THE COURT:  Why were the charges dismissed?  Do you

10:24AM  13   know?

10:24AM  14           MR. LENIHAN:  I can't -- I don't have those files.

10:24AM  15           THE COURT:  Why were the charges dismissed?

10:24AM  16           MR. LENIHAN:  What, Judge?

10:24AM  17           THE COURT:  Why were the charges dismissed?

10:24AM  18           MR. EOANNOU:  Because there was no proof.

10:24AM  19           THE COURT:  Why was he arrested?

10:24AM  20           MR. EOANNOU:  Because, you know, Judge, I did see at

10:24AM  21   some point, some of the charges -- I did look at them.  They

10:25AM  22   arrested a group of people.  And then, they would figure out

10:25AM  23   whose gun it was or whose drugs it was.  And that's how -- my

10:25AM  24   understanding is that's how those shook out.  And the bottom

10:25AM  25   line is, he was dismissed.  You can't hold that conduct

U.S. v. LAMARIO MILLS  --  ORAL ARGUMENT  --  11/05/19

10:25AM  1   against him.  He was not violated on probation.

10:25AM  2          And by the way, in the state system, if you are

10:25AM  3   arrested and there's a basis for your arrest, the probation

10:25AM  4   officer makes a decision, not on the conviction but on the

10:25AM  5   arrest.  And in his case, now, as they do in federal court,

10:25AM  6   not one time did he violate the terms and conditions of his

10:25AM  7   probation and he successfully completed it.

10:25AM  8          THE COURT:  All right.  Anything further?

10:25AM  9          MR. EOANNOU:  No, Judge.

10:25AM  10          THE COURT:  I'll reserve decision on it.

10:25AM  11          MR. EOANNOU:  Thank you.

10:25AM  12          MR. LENIHAN:  Thank you, Your Honor.

10:25AM  13   (Proceedings ended at 10:25 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    *    *    *    *    *    *    *

2

3            I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                            s/ Megan E. Pelka, RPR

10                           Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25