1                  UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              20-M-30(HKS)
4
     vs.
5                                          Buffalo, New York
     DAVID BURGIN AND RODNEY PIERCE,       February 24, 2020
6              Defendants.                 2:57p.m.
     - - - - - - - - - - - - - -X
7
                      TRANSCRIPT OF PROCEEDINGS
8          BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
                   UNITED STATES MAGISTRATE JUDGE
9
                      JAMES P. KENNEDY, JR., ESQ.
10                    United States Attorney
                      BY: LAURA A. HIGGINS, ESQ.
11                        TIMOTHY C. LYNCH, ESQ.
                      Assistant United States Attorneys
12                    138 Delaware Avenue
                      Buffalo, New York 14202
13
                      MICHAEL M. BLOTNIK, ESQ.
14                    300 Delaware Avenue
                      Buffalo, New York 14202
15                    Appearing on behalf of David Burgin

16                    BARRY N. COVERT, ESQ.
                      42 Delaware Avenue, Suite 120
17                    Buffalo, New York 14202
                      Appearing on behalf of Rodney Pierce
18

19   ALSO PRESENT:       Brian Mamizuka, U.S. Probation Office
                         Melissa Linton, U.S. Probation Office
20
     AUDIO RECORDER:     Llane M. Guidotti
21

22   TRANSCRIBER:        Christi A. Macri, FAPR-CRR-RMR-CSR(CA/NY)
                         Kenneth B. Keating Federal Building
23                       100 State Street, Room 2120
                         Rochester, New York 14614
24

25   (Proceedings recorded by electronic sound recording,
     transcript produced by computer).

1           <u>P R O C E E D I N G S</u>

2                        *     *     *

3           (**WHEREUPON**, the defendants are present).

4           **THE CLERK:** United States vs. David Burgin and

5    Rodney Pierce, Docket No. 20-M-30, this is the appearance of

6    counsel and detention hearings.

7           Assistant United States Attorneys Timothy Lynch and

8    Laura Higgins appearing on behalf of the Government.

9           Michael Blotnik appearing with David Burgin.

10          Barry Covert appearing with Rodney Pierce.

11          **MAGISTRATE JUDGE SCHROEDER:** Good afternoon.

12          **MR. LYNCH:** Good afternoon, Judge.

13          **MAGISTRATE JUDGE SCHROEDER:** We're here for a

14   detention hearing?

15          **MR. LYNCH:** Yes, Judge.

16          **MAGISTRATE JUDGE SCHROEDER:** Are we ready to

17   proceed?

18          **MR. LYNCH:** The Government's ready, Your Honor.

19          **MR. COVERT:** We are, Your Honor.

20          **MR. BLOTNIK:** We're ready, Your Honor.

21          **MAGISTRATE JUDGE SCHROEDER:** All right, Mr. Lynch.

22          **MR. LYNCH:** Judge, the defendants are charged in a

23   criminal complaint signed by this Court on February 20th,

24   2020.  It alleges in Count 1 that the defendants, David Burgin

25   and Rodney Pierce, conspired to possess with intent to

1   distribute 500 grams or more of cocaine in violation of the

2   federal drug laws.

3          That charge alone triggers the Government's right

4   to a detention hearing because the offense for which the

5   defendants are charged is a -- has a maximum penalty of ten

6   years or more.

7          Here the defendants face a minimum penalty of five

8   years if convicted, and a maximum penalty of 40 years.

9          Count 2 only charges David Burgin, but it similarly

10   triggers that provision that permits the Government to move

11   for a detention hearing.

12          And then Count 3 charges David Burgin with

13   possession of firearms on February 19th, 2020, at 56 Grimes

14   Street in Buffalo, New York.  And at that location, Judge, the

15   Government seized two handguns as well as two assault rifles.

16          And I'll go into a little more detail about those,

17   but because the maximum penalty for Count 3 is life and it

18   also involves the possession of a firearm, that also triggers

19   the Government's right to a detention hearing under the law

20   and the Government is moving for detention against both

21   defendants based on their danger to the community as well as

22   their risk of flight.

23          And as the Court is well aware, the Government's

24   burden is by clear and convincing evidence with respect to

25   danger and by a preponderance of the evidence as to risk of

1  flight, and the Government believes that following its

2  detention hearing the Government -- the Government will have

3  satisfied its burden with respect to both positions.

4          Judge, based on the nature of the charges, there

5  also is a presumption under 3142 which says that there are no

6  conditions or combination of conditions which would assure

7  against their danger and their risk of flight, and the

8  Government relies upon that presumption at the outset of this

9  detention hearing.

10          Now, Judge, I've had an opportunity to review the

11  Pretrial Services report here and while the Pretrial Services

12  report recommends for both defendants that they be -- they be

13  released on non-financial bonds, the Government believes that

14  the Probation Department hasn't adequately considered all the

15  factors as this Court must under 3142 because it really

16  doesn't look at the weight of the evidence, nor does it really

17  look at the nature and circumstances of the offense as it

18  relates to danger when there's drug dealing involved.

19          And as the Court is aware, under the law Congress

20  has found that drug dealing offenses do constitute a danger to

21  the community and in this case this level of sophisticated

22  drug dealing that David Burgin has been engaged in for more

23  than a decade, and Rodney Pierce has been a close associate of

24  David Burgin for several years, Judge, we believe that David

25  Burgin and Mr. Pierce pose a great danger to the community

1 based on the amount of drugs that they've been distributing in

2 the City of Buffalo.

3          Now, Judge, the events occurred originally on

4 February 19th, 2020.  And I want to talk about first the

5 nature and circumstances of the offense; and this Power Point

6 presentation which I've provided to defense counsel will also

7 address the weight of the evidence against each defendant, and

8 I believe that you will find, Judge, after this presentation

9 that the weight of the evidence or the likelihood of

10 conviction is quite high for both defendants.

11          On February 19th, Judge, an individual was

12 arrested, he agreed to cooperate, and it resulted in

13 communications between the confidential source and Rodney

14 Pierce, which led to them agreeing to deliver one kilo of

15 cocaine to the confidential source.

16          As a result of those communications, Rodney

17 Pierce's vehicle was stopped.  And if you see, Judge, on the

18 first page of this Power Point you will see a backpack on the

19 front passenger seat of the vehicle.  The -- Rodney Pierce was

20 the only occupant of the vehicle.  And within that bag, which

21 also included Rodney Pierce's personal information, there was

22 over a kilo of cocaine.

23          In addition, found within the vehicle was vacuum

24 sealed bags, Judge, which according to law enforcement is

25 regularly used in the distribution of narcotics and, in fact,

1  you can see in the bottom left-hand corner, Judge, the use of

2  a vacuum sealed bag like that which is to contain a partial

3  portion of cocaine that was smaller than a kilo of cocaine.  I

4  think the estimates are, Judge, approximately between one and

5  a quarter and one and a half kilos of cocaine.

6            So found in Mr. Pierce's vehicle, it's a vehicle

7  that is rented -- I'm sorry, that is registered to his

8  girlfriend.  And so the evidence against Mr. Pierce is quite

9  strong considering that this stop was precipitated by -- by

10  consensual calls and text messages between the confidential

11  source and Rodney Pierce.

12            **MAGISTRATE JUDGE SCHROEDER:** In looking at that

13  exhibit, is the kilo of cocaine that you referenced the one

14  depicted as the yellow rectangular object --

15            **MR. LYNCH:** Correct, Judge.

16            **MAGISTRATE JUDGE SCHROEDER:**  -- in the upper right

17  photograph?

18            **MR. LYNCH:** It's in the upper right and the bottom

19  left.

20            **MAGISTRATE JUDGE SCHROEDER:** All right.

21            **MR. LYNCH:** Following the encounter of -- the arrest

22  of Rodney Pierce, law enforcement had previously seen

23  Mr. Pierce enter 56 Grimes and go in and out of the building

24  several times prior to being arrested and prior to delivering

25  the cocaine -- the anticipated delivery of the cocaine to the

1  confidential source.

2          So a state search warrant was obtained for 56

3  Grimes based on not only Mr. Pierce's presence at 56 Grimes,

4  but also the fact that law enforcement had observed David

5  Burgin's vehicle outside that premises and had observed him

6  outside that premises that evening.

7          Based on that a search warrant was obtained first

8  for the lower portion and then the upper portion of the

9  premises where as listed there two handguns were found, Judge,

10 two assault rifles, approximately $250,000 in United States

11 currency and I think that demonstrates, Judge, the scale and

12 scope at least initially of Mr. Burgin's operation here in the

13 City of Buffalo.

14         2.35 kilos of suspected cocaine, 114 grams of

15 suspected fentanyl, narcotic presses, money counters, vacuum

16 sealers, large containers of cut which are regularly used to

17 dilute cocaine so that you can expand the product and sell

18 more of it in the City of Buffalo actually and make more

19 profit.  Packaging materials.

20         In addition, Judge, mail addressed to David Burgin

21 at 79 Brunswick where a search warrant was later executed the

22 next day.

23         Within 56 Grimes, Judge, you can see on this third

24 slide the narcotics press contained on the left-hand side of

25 the screen.  What it does is this -- the hydraulics at the

1    bottom of the press, Judge, presses up against the top to

2    compress the cocaine and cut to make an additional kilo of

3    cocaine so you can take an original kilo, add cut, stretch it

4    out and then sell it.

5              Down in the bottom right-hand corner, Judge, is

6    another kilo of suspected cocaine.  It's labeled with

7    Lambroghini on it.  And then in addition, Judge, in the top

8    right-hand corner was a National Fuel bill addressed to David

9    Burgin at 79 Brunswick, and that was found in the upper

10   portion of 56 Grimes.

11             On the fourth page -- on the fourth slide you'll

12   see that there not only was a large quantity of cut, that's in

13   the top left-hand corner, Judge, those are two Rubbermaid or

14   plastic tubs containing cocaine cut which can be added, again,

15   to already purchased cocaine to stretch out the product.

16             A large quantity of marijuana is contained in the

17   top right-hand photograph.  And then there's two pictures,

18   Judge, at the bottom of this slide which demonstrate that the

19   large quantity of currency which has been counted and it's

20   approximately $250,000.

21             Within a closet in the second floor, Judge,

22   contained within two bags were these assault rifles on the

23   left-hand side of the screen as well as two handguns that are

24   contained on the right-hand side of the screen.

25             At this point, Judge, the Government doesn't have

1  any information regarding where these firearms were obtained,

2  but the Government's not aware of Mr. Burgin having -- or

3  Mr. Pierce having firearms registered to them.

4          The next day, Judge, a search warrant was executed

5  at Burgin's residence at 79 Brunswick.  In addition, two

6  additional firearms were seized at the residence, Judge,

7  including this handgun contained on the right-hand side of

8  this display here.

9          But I think really pertinent, Judge, was there was

10  a ledger listing properties owned by Mr. Burgin, including 56

11  Grimes, which -- let me just see, Judge, in the bail report I

12  don't believe Mr. Burgin listed this as an address of his.  In

13  fact, the only ones he listed were 73 Rogers and 239

14  Stockbridge.

15          But there were plans for that location within 56

16  Grimes.  I believe he had property receipts relating to 56

17  Grimes.  But in addition, he also had 73 Rogers listed, which

18  as the Court will find out later there was a significant

19  amount of cocaine, fentanyl and money found at that location.

20          And that's right, Judge, he had a zoning board

21  letter from the Buffalo Zoning Board for 56 Grimes, it was

22  addressed to him at 79 Brunswick.

23          So when you look at the bail report, we're

24  already -- and I think you're really going to question

25  Mr. Burgin's finances once I get through all of my

1   presentation, Judge, but already now we already have a

2   question about whether Mr. Burgin was even honest when he sat

3   down and was interviewed by the U.S. Probation officer about

4   the property that he owns, the money that he has and that's,

5   again, just the beginning.

6           He also had notes in there regarding high end

7   jewelry that he had apparently purchased, as well as debit

8   cards in the name of David Washington, which as the Court is

9   aware David Washington was indicted by a federal grand jury on

10  Thursday afternoon.  He is presently charged in a cocaine

11  conspiracy involving 5 kilograms or more of cocaine.

12          And, Judge, I fully expect that Mr. Burgin is going

13  to find himself as well as Mr. Pierce find themselves

14  co-defendants of Mr. Washington in the very near future.

15          On this fifth -- seventh slide, Judge, you'll see

16  that this is a handwritten ledger that was found in

17  Mr. Burgin's residence at 79 Brunswick.  It lists several

18  addresses with numbers next to it.  The first one being 31

19  Bennett -- BV, which we believe stands for Bennett Village

20  Terrace, Judge, which is a location in the City of Buffalo.

21          69 Bennett Village Terrace, which at least is in

22  the name of Sonya Burgin, the defendant's sister, but it was

23  also the location where David Washington was found, arrested,

24  in possession of 12 cell phones and approximately $77,000.

25          73 Rogers, 239 Stockbridge, 37 Stephens, 56 Grimes,

1   92 Brunswick which was right down from where Mr. Burgin lived

2   at 79 Brunswick.  So, again, Judge, the Government's belief is

3   that the defendant actually has an interest, if not the whole

4   interest in all of these properties, and that if they're in

5   the names of other individuals or other family members, that's

6   simply to hide Mr. Burgin's possession and ownership of those

7   locations.

8           In the picture on the right, Judge, is a rifle that

9   was also found within the residence.

10          And now that takes us to 73 Rogers, Judge, because

11  as I indicated the defendant David Burgin had not only listed

12  this in the Probation report, but he also had records at his

13  residence indicating his ownership in this premises.

14          This premises was searched on February 21st.  They

15  found a hydraulic trap in the stairs.  There was a front

16  closet with a false wall and a hydraulic trap.  There was a

17  money counter, scales, a vacuum sealer, packaging.  This is an

18  official count of $246,775 in United States currency.  Two

19  kilos of fentanyl, a kilo of cocaine and a kilo of crack.

20          Again, Judge, this -- now at this point we're at

21  approximately $500,000 directly linked to Mr. Burgin not only

22  through his -- his ownership of both properties, but also his

23  presence at 56 Grimes just before the warrant was executed by

24  the Erie County Sheriff's Department and Buffalo Police

25  Department.

1         Slide number nine, Judge, gives the Court an idea

2    of the significant amount of drugs seized at the location.  On

3    the left-hand side, Judge, you can see the kilo packages in

4    that photograph as well as loose portions of drugs which

5    include what we believe to be approximately one kilo of

6    cocaine.

7         In addition, on the right-hand side is just a

8    significant amount of U.S. currency.  And it's my

9    understanding, Judge, to demonstrate how much this is or the

10   quantity in which it is, there was $4,000 in fives, Judge, and

11   there was approximately $13,000 in tens.

12        And I would suggest to this Court based on

13   everything that's been presented, Judge, that's indicative of

14   large scale drug dealing even at the small level, which means

15   that users and the like are coming and buying drugs and those

16   fives and tens are being funneled back to Mr. Burgin for

17   payment for drugs and -- Mr. Burgin and Mr. Washington, and

18   they've then been stored at 73 Rogers in the City of Buffalo.

19        The next slide, Judge, gives you an idea about the

20   false wall and the sophisticated nature in which the drugs

21   were -- or the money was hidden from view.  And if you can see

22   on the right-hand side, Judge, initially you had to get

23   through that plywood.  Once that was removed, Judge, it went

24   into another room whereas you can see, Judge, on the left-hand

25   side there's money stacked from the floor almost to the middle

1   of the wall and then all the way over more United States

2   currency at the top portion of that.

3              Now, on February 21st 69 Bennett Village Terrace

4   was also searched that morning.  Again, David Washington was

5   arrested there.  Source information that the Government has,

6   Judge, says that Mr. Washington and Mr. Burgin are close

7   associates.  They had been for quite a while.

8              12 cell phones were seized from Mr. Washington at

9   that point.  The Government's evidence at least prior to the

10  search warrant was that Mr. Washington over the past few years

11  has purchased 18 iPhones, Judge.  His reason for using

12  iPhones, we believe, Judge, is because that is what he

13  believes to be the best method to ensure that his

14  conversations aren't intercepted by law enforcement.

15             But also, Judge, I think the Court can take

16  judicial notice that iPhones are quite expensive.  I mean, if

17  you're talking 18 iPhones, they're anywhere between 750 and

18  $1,000.  The amount of money being spent on iPhones like that

19  is because they obviously want their business to be secretive,

20  they don't want to get caught, they're consistently flipping

21  their phones in order to avoid law enforcement detection.

22             In addition, in the floorboards of that residence,

23  Judge, there was approximately $77,000.  There was also

24  additional thousands of dollars found within the residence as

25  well as in a rental car that Mr. Washington had rented.

1          There were two expensive rings.

2          There was a floor safe that although didn't have

3    any money, Judge, the Government has source information --

4          **MAGISTRATE JUDGE SCHROEDER:** Wait a minute.  You

5    said Mr. Washington?

6          **MR. LYNCH:** Yes.  Yeah, Mr. Washington and

7    Mr. Burgin, Judge, are linked not only by 73 Rogers because

8    that's in the name of Mr. Burgin, but we also have witnesses

9    that put Mr. Washington at that location.

10          In addition, Judge, 69 Bennett Village Terrace is

11    owned by Sonya Burgin, David Burgin's sister.

12          In addition, this address 69 Bennett Village

13    Terrace is listed in David Burgin's ledger that was found at

14    79 Brunswick.

15          So, again, now between those three -- those three

16    areas -- the Rogers, Bennett Village Terrace and Grimes, there

17    is more -- more than half -- a half a million dollars has been

18    seized from this organization.

19          But Mr. Burgin's history with law enforcement goes

20    back quite a while.  In 2007, Judge, he was named in a federal

21    wiretap.  At the time he was, according to source information,

22    moving between 30 to 50 kilograms of cocaine per month.

23          Several members of David Burgin's organization was

24    arrested at that time, including Vinnie Lagrange, Robert

25    Dewitt Stevenson and others.

1          Although Mr. Burgin wasn't arrested at that point,

2     Judge, the IRS did a significant tax investigation of

3     Mr. Burgin and that tax investigation was reinvigorated when

4     my case against Mr. Burgin opened in 2015.

5          And in order for the Court to get an idea of the

6     scope of Mr. Burgin's activities, Judge, I've listed for the

7     tax years that I know about for Mr. Burgin his reported income

8     for the years 2004, 5, 6, '14, '15, '16, '17 and '18.  The

9     reported earnings are approximately $108,827, Judge.

10          Based on his known expenditures -- and that's

11     simply expenditures that can be tied to his bank accounts,

12     credit card records, credit card payments.  Those same years,

13     Judge, his total known expenditures -- that's not cash

14     expenditures -- it's over a million dollars.

15          Now, the bail report here, Judge, indicates that

16     Mr. Burgin has been working I guess on and off for a

17     construction company -- on and off the books.  He's got no

18     real history of employment.  He didn't list any other business

19     other than that construction business.

20          He's really got no verification for the -- even the

21     interest he has in these homes and how he would have purchased

22     them, but obviously this tax investigation gives the Court an

23     idea that where he's been generating his money is through his

24     illegal activities, that being his sale and distribution of

25     cocaine in the City of Buffalo.

1          Now, with respect to Mr. Burgin, too, Judge, in

2    March of 2017 there was a video recording of Mr. Burgin at a

3    hotel room in the City of Buffalo.  He met with a confidential

4    source.  And the statements made by Mr. Burgin in this --

5    during this meeting are enlightening because they demonstrate

6    not only Mr. Burgin's -- the scope of his organization, but

7    how much money he has available at any time to pay for large

8    quantities of cocaine.

9          And initially in this hotel room the confidential

10   source was talking to Mr. Burgin about the cocaine prices in

11   the City of Buffalo.  And David Burgin says, shit, right now

12   we pay 30 and we get it to come here.

13         So what Mr. Burgin is saying, Judge, is that they

14   don't have to go travel down anywhere to get it.  And he says,

15   I mean, it's cheaper in other places, you know, but whatever.

16   I ain't trying to be nowhere, shit.

17         The confidential source says they're 25,000 per

18   kilo down in the location where the source is from.  David

19   Burgin responds I know -- and he goes on to say, I don't like

20   the road.  He doesn't want to have to worry about transporting

21   the cocaine up to Buffalo.

22         And right there at the end, Judge, he says, I mean,

23   shit, I be chilling.  I don't try to do much, me and my man --

24   which, Judge, the Government believes is David Washington --

25   like 20 a week.  20 kilograms a week, Judge, some shit like

1    that, call it a day and just be laughing other than that.

2              So this is now even almost three years prior to his

3    arrest on Grimes where he's in possession of a large quantity

4    of drugs and a large quantity of cocaine and four firearms.

5              The source then says if I was able to get 15, how

6    much can you pay upfront?  And as the Court's aware, sometimes

7    drugs are sold on consignment.  So you might give somebody

8    drugs and then they come back with payment.

9              And Burgin laughs, almost makes it clear, that

10   ain't shit change, it ain't nothing.  If you get here with 15,

11   I'm gonna pay for 15.  I mean, all I have to know is how to

12   coordinate.  Like I said, I have people that comes all the

13   time.

14             So at 20 kilos at -- I'm sorry, 15 kilos at $30,000

15   apiece is $450,000, Judge.  So, again, it demonstrates the

16   sheer size and scope of David Burgin's organization that has

17   been operating for more than a decade.

18             But there's more, Judge.  Not only that, he

19   discusses marijuana.  He says he can take faith 500 pounds of

20   marijuana right away.  No problem.  The only matter is how

21   much the price is and how good the marijuana is.

22             And, Judge, this was -- this was left out of the

23   Pretrial Services report, according to Mr. Burgin, but

24   Mr. Burgin has a -- has a business interest in a collection

25   agency in Jamaica.  Now, according to the Pretrial Services

1    report, he indicated he only had gone to Jamaica for pleasure,

2    but as what's clear from this transcript and what's even more

3    clear from the financial records, Judge, Mr. Burgin has been

4    obtaining a large quantity of deposits from Wolfberg & Stein,

5    which is a company that's in Jamaica, anywhere between 50 and

6    $90,000 in some years, and I believe that that's the money

7    that he's talking about here when he talks to the source and

8    says he has a business in Jamaica.

9           David Burgin says I go to Jamaica and they -- my

10   business partner's over in Jamaica, his name is Mubarack

11   Saeed.  Those motherfuckers be thinking I'm going to see a

12   terrorist.  Now, he's talking about the Government because he

13   doesn't like to cross the border.

14          And he goes on and he talks about how he deals with

15   them, the headaches he has crossing the border.  And then he

16   goes on to say, you know, talking about his businesses, he has

17   to legitimize his money because he wants to get out of the

18   cocaine business at some time.  Ain't no -- because you get

19   addicted to this shit.  I was like unless you super smart and

20   you set up some legal shit that's gonna bring you in just as

21   much money than you're making now, you're never gonna want to

22   quit this.

23          So he goes right now I'm about to get 70,000 a

24   month completely legal, but he never has had the income to

25   demonstrate that he could even purchase an interest -- a legal

1  interest in a business, let alone one that generates $70,000 a

2  month in Jamaica.

3          He then goes on and talks about cocaine prices.

4  You can't do more than 30.  Man, not really, that's what I'm

5  getting at right now.  That -- that's -- that's -- quality's

6  great and just 'cuz we don't drive and get it, my other piece

7  is in Chicago.  So he's talking about the fact that David

8  Burgin has a source of supply also in Chicago.

9          And they start talking about how much it would cost

10 to bring cocaine, how much it's per kilo to transport it to

11 Buffalo, approximately $1,300 per kilo.

12         He then goes on and talks about -- again about his

13 business interests in Jamaica.  And he talks about the fact

14 that there's 200 employees at the office in Jamaica where they

15 pay them 90 cents an hour.  So labor is cheap over there and

16 then David Burgin says why the hell you think my office is

17 over there?  That's why we went over there.  That's --

18 that's -- that's what -- I'm mad as hell, I've got to file

19 these fucking taxes, yeah, I got to file taxes for the last

20 two years, yeah.

21         Then he goes on to say my accountant had me --

22 well, you know, you gonna owe about 70,000.  And I'm like as

23 long as I don't touch it, he's just letting me know I'm almost

24 done.

25         So again this is not -- this is not listed in the

1  Pretrial Services report.  In fact, his -- based on the amount

2  of money that was seized in this case, he hasn't even provided

3  a proper calculation of his assets.

4           So when you have this amount of money at his

5  disposal, Judge, the risk of flight in a case like this, where

6  Mr. Burgin has avoided law enforcement arrest for more than a

7  decade, Judge, the likelihood of him fleeing is extremely

8  high.

9           Although we've seized to date approximately

10  $750,000, Judge, from Mr. Washington and Mr. Burgin, there's

11  no saying that that's everything, Judge.  Certainly there's

12  more money at Mr. Burgin's disposal.  This interest in this

13  Jamaican company, Judge, could be cashed out.  He could flee

14  to Jamaica where he has apparently business partners.

15          And Mr. Pierce, Judge, has the same connection to

16  Mr. Burgin.  He's his nephew.  It's apparent to the

17  Government, Judge, that the Burgin family has set up other

18  businesses the Government believes, Judge, are actually funded

19  by David Burgin and it's simply a way for him to clean his

20  money, including David Burgin's sister.

21          And so there's a lot at stake here for them.  And

22  if they're convicted and the likelihood of conviction is high,

23  Judge, they're going to spend a great deal of the rest of

24  their life in prison based on the number of kilos of cocaine

25  that Mr. Burgin's been involved in.  So that not only

1    demonstrates their danger to the community, but it gives them

2    a strong reason to flee.

3         And then the last page of this exhibit, Judge, just

4    demonstrates that he again talks about his business in

5    Jamaica.  He talks about his partners and he notes that one of

6    the partners paid approximately $180,000 and my other partner

7    owed about $300.  And he says 300,000 and as he said, Uncle

8    Sam gets his money.  Well, Uncle Sam got his money on

9    February 20th and 21st from David Burgin, that's for sure.

10         Judge, I went through that -- those -- that

11   evidence, Judge, for the purpose of demonstrating several of

12   the factors that the Court has to consider and weigh when

13   determining whether there are any conditions or combination of

14   conditions which would assure against their flight and their

15   danger to the community.

16         And the first factor is you have to consider nature

17   and circumstances of the offense.  Does it involve a

18   controlled substance offense?  It does, Judge.  The nature and

19   circumstances of the offense are -- are high.

20         The case involves the possession of fentanyl, which

21   the Court knows is one of the most, if not the most dangerous

22   drug that is sold in the United States; it's caused countless

23   number of deaths.  And even more overdoses than actually,

24   Judge, have been prevented by the use of Narcan.  There could

25   have been more deaths.

1             And individuals who sell these drugs -- and

2    Mr. Burgin's not even a user of drugs -- they do it, Judge,

3    simply to make money and that's what Mr. Burgin has been doing

4    for nearly his whole adult life.

5             And you have to look at the weight of the evidence

6    against the person.  And, again, Judge, based on the evidence

7    presented here, based on the information that's in the

8    complaint, the likelihood of conviction is extremely high.

9             Mr. Burgin not only is -- not only does he own 56

10   Grimes, not only was he seen at 56 Grimes, but kilos of

11   cocaine had just come out of there, kilos of cocaine were

12   found in there and firearms were found in there as well as

13   what's -- all the makings of a drug business, Judge: Vacuum

14   sealers, money counters, cut, cocaine press.  That's his

15   business office right there.

16            And Mr. Pierce, he's -- he's in deep with

17   Mr. Burgin.  He's the one that was sent out to go deliver the

18   drugs.  David Burgin is not gonna go deliver the drugs.  So

19   who does he have?  He has Rodney Pierce go do it, his nephew.

20            And Rodney Pierce, Judge, when you look at his

21   employment history, it's scant, too.  He hasn't worked in nine

22   months, he hasn't worked in nine months, Judge, because he's

23   been dealing drugs in the City of Buffalo.

24            You also have to consider the history and

25   characteristics of the person.  Their character, Judge.  Well,

1  based on the evidence presented here, Judge, they're both drug

2  dealers.  So the character of the two I don't think really

3  should be given much -- shouldn't be -- there's not much

4  positive character traits by either defendant.

5          Do they have family ties?  Of course they have

6  family ties in this area, Judge.  They've lived their whole

7  life here.  But that factor alone doesn't outweigh the

8  dangerousness of these defendants, the sheer scope of their

9  drug dealing.

10          And I know that Mr. -- defense counsel submitted

11  letters to me prior to it, but, Judge, I mean, these people

12  wrote these letters.  I doubt they know what the scope of the

13  defendants' involvement in cocaine trafficking is and, quite

14  frankly, it paints a different -- what the Government has

15  presented here today, paints a completely different picture

16  than what I'm sure they may know about or they would be

17  willing to say.

18          And to the extent that they know about Mr. Burgin's

19  activities, Judge, these letters aren't worth the paper that

20  they're printed on then because they're simply trying to get

21  this Court to release Mr. Burgin when , in fact, the

22  likelihood of him re-offending, the likelihood of him coming

23  back is just -- or not coming back is extremely high.

24          You have to look at their past conduct.  Now, I

25  know each one of them doesn't have much of a criminal history,

1   Judge.  But when you look at Mr. Burgin's past conduct, you

2   know, the -- not only did the IRS information tell a story,

3   Judge, about his financial situation, but the video

4   recorded -- video recorded meeting with the source in March of

5   2017 demonstrates that Mr. Burgin just unequivocally has been

6   involved in major cocaine trafficking for a significant period

7   of time.

8            The -- the snippets I put on there, Judge, are

9   simply just photo stills from that video.  It's clear it's

10   Mr. Burgin.  It's in high definition.  And it goes on for a

11   lengthy period of time.  I only took a couple of snippets.

12   The video is so long it had to be broken up into nine parts.

13            So Mr. Burgin is not going to be able to walk away

14   from those statements.  Those statements are highly

15   incriminating.  They demonstrate that, again, he has been the

16   head of a significant cocaine organization operating in the

17   City of Buffalo for a very, very, very long period of time.

18            It's just now that the Government was able to, we

19   believe, obtain sufficient evidence tieing him to 56 Grimes as

20   well as the cocaine and the money that was seized there that

21   he was charged.

22            The other factor you have to consider, Judge, is

23   the nature and seriousness of the danger to any person that

24   the defendant poses.  And, again, both of these defendants

25   pose a serious danger to the community based on their

1    involvement in the offense charged.  The seriousness of the

2    drugs that are being sold.

3          And when you consider all the factors, Judge, and

4    -- and Probation, I point out, Judge, they haven't considered

5    all the factors like the Court has to, like the Government has

6    to, including the weight of the evidence, the nature of the

7    dangerousness that's posed by Mr. Burgin and Mr. Pierce to

8    this community.

9          And while I appreciate their efforts here, Judge,

10   they're always doing their best, the information that's

11   provided is only as good as what the defendant told them.  And

12   it's clear, Judge, Mr. Burgin didn't tell them much of

13   anything.

14         And, you know, the business interests in Jamaica

15   is -- is just the beginning.  Mr. Burgin has traveled

16   extensively.  He's been to Houston, he's been to Atlanta, he's

17   got connections to a jewelry store in Charlotte.

18         So the sheer scope of the money he's been making,

19   the amount of drugs that he's been selling, Judge, I think the

20   Government has demonstrated by clear and convincing evidence

21   that he -- both defendants pose a danger to the community, but

22   also by a preponderance of the evidence that both defendants

23   pose a risk of flight, Judge, and we would ask that both David

24   Burgin and Rodney Pierce be detained pending indictment and

25   trial in this case.

1          **MR. COVERT:** Which defendant would you like to have

2     proceed first?

3          **MAGISTRATE JUDGE SCHROEDER:** I realize that

4     Mr. Lynch made a fairly lengthy presentation.  I'm going to

5     give each defense counsel ten minutes to at least confer with

6     their clients, we'll recess until quarter to.

7          **MR. COVERT:** Very good.  Thank you, Your Honor.

8          (**WHEREUPON**, there was a pause in the proceeding.)

9          **THE CLERK:** Back on the record.

10         **MAGISTRATE JUDGE SCHROEDER:** Mr. Covert, Mr.

11    Blotnik, did you have an opportunity to confer with your

12    clients?

13         **MR. COVERT:** We certainly did, Your Honor.  Thank

14    you.

15         **MAGISTRATE JUDGE SCHROEDER:** All right.

16         **MR. COVERT:** I think Mr. Blotnik is going to proceed

17    at this point.

18         **MAGISTRATE JUDGE SCHROEDER:** All right.  Just so

19    you're close to a microphone, yes.

20         **MR. BLOTNIK:** Good afternoon, Your Honor.  I've

21    listened to Mr. Lynch, spent approximately an hour of the

22    Court's time today in an effort to basically try the

23    defendants' case before we even start.

24         It has always been my understanding that the

25    purpose of bail was merely to assure the presence of the

1  defendant at each and every proceeding of the upcoming trial,

2  if there be one, and to be here for each and every court

3  appearance.

4           I submit, Your Honor, that the Probation Department

5  is experienced in asking the proper questions and obtaining

6  the proper information so that they can make a proper and

7  legitimate recommendation to the Court as to whether or not a

8  defendant should be released on bail or released on -- on bail

9  with various conditions as was recommended for my client

10  Mr. Burgin.

11           It was only a couple days ago, Your Honor, there

12  was a big article in the newspaper, which I'm sure that the

13  U.S. Attorney's Office provided information, where they

14  attributed all of these drugs and money to Mr. Washington.

15           Mr. Lynch is here today trying to attribute the

16  same drugs and the same monies that they recovered and now

17  he's saying that they are actually belonging to Mr. Burgin.

18           Mr. Burgin was found without -- was never found in

19  possession of any of the contraband that the Government

20  alleges belongs to him.  He was not found inside any of these

21  properties.  The firearms that they're speaking of were never

22  seen in his possession.

23           The only firearm, Your Honor, that is in the

24  property he occupies, the weapon that was found at 79

25  Brunswick is a legal weapon which is owned by one of his

1   sisters who has a permit for same.  That home is the family

2   home of the Burgin family.  That's where Mr. Burgin was raised

3   and it's still occupied by several members of the family who

4   use it from time to time.

5           It's my understanding that Mr. Burgin's sister,

6   Erica Copeland, still occupies that house and uses it as her

7   mailing address and left her weapon, which is -- for which she

8   has a permit -- in the residence.

9           It's my understanding that nothing else was found

10  in the residence, Your Honor, that could be attributed to my

11  client.

12          The other properties that Mr. Lynch mentioned,

13  namely, 73 Rogers is owned by my client, but is not occupied

14  by my client and he was not seen at that property at any time.

15  In fact, the newspaper article attributes everything that was

16  found therein -- a large amount of cash and drugs -- to Mr.

17  Washington.  As far as I know, Mr. Washington is not charged

18  in this complaint as a co-defendant.

19          As far as the 69 Bennett Village address, which was

20  occupied by -- as Mr. Lynch indicates, stated himself today

21  was occupied by Mr. Washington, and all of the contraband that

22  was found therein I'm assuming would belong to Mr. Washington,

23  not Mr. Burgin.

24          As far as Mr. Burgin's income, Your Honor,

25  Mr. Burgin had numerous years where he earned a significant

1  amount of income and saved a lot of his money.  It's

2  convenient that the Government skipped all the years where he

3  made a lot of money are not included in their list of income.

4  They take all the years when he filed smaller amounts, but

5  during the years of -- just one second.

6         In the years of '07 and 2013, he owned a collection

7  agency where he earned a significant amount of money and paid

8  significant amount of taxes.  And this is a distorted picture

9  of his income and the payments that he made to the Government.

10         **MAGISTRATE JUDGE SCHROEDER:** Is that the collection

11  agency that was referenced as being in Jamaica?

12         **MR. BLOTNIK:** No, Your Honor.  There's another

13  collection agency that operated in the City of Buffalo.

14         Mr. Lynch indicated that Mr. Burgin was arrested

15  on -- at the property on Grimes Street, which is incorrect.

16  He was arrested in his vehicle.  He was seen in -- in his

17  vehicle on Grimes Street, but he was never seen and never

18  arrested at the property that Mr. Lynch indicates.

19         **MAGISTRATE JUDGE SCHROEDER:** My recollection is he

20  said Mr. Burgin was arrested while driving the vehicle and

21  that when removed from the vehicle and a search of the vehicle

22  made, certain things were found as depicted in the photograph.

23         **MR. BLOTNIK:** Not in Mr. Burgin's vehicle.  What's

24  depicted in the photographs, Your Honor, is what was found in

25  Mr. Pierce's vehicle.

1          **MAGISTRATE JUDGE SCHROEDER:** All right.

2          **MR. BLOTNIK:** There was nothing found in

3   Mr. Burgin's vehicle other than his personal belongings.

4          Your Honor, Mr. Burgin is a life-long resident of

5   this area.  He has a large family, they all live here, most of

6   them are in the courtroom.

7          I submitted numerous letters, character letters

8   from various people that Mr. Burgin is acquainted with: Two

9   ministers, two medical people and friends and relatives, all

10  of whom think very highly of Mr. Burgin.

11         He's very active in the community.  He would have

12  no reason to flee.  And as I stated at the outset, Your Honor,

13  it is the purpose of this hearing to ascertain whether or not

14  Mr. Burgin is a danger to the community or is a flight risk,

15  and I submit that neither one of those applies to Mr. Burgin.

16         Mr. Burgin has never been arrested for any violent

17  crime or should say never convicted of one.  And the only

18  thing -- and he travels -- for a person his age has traveled

19  is not that extensive.  He's been to Panama and Jamaica is the

20  only countries he's ever been to.

21         I submit, Your Honor, that we would be in a -- we

22  would voluntarily surrender his passports to assure the Court

23  that he would not travel anywhere.

24         We would consent to the conditions recommended by

25  the Probation Department, namely, that he be released to 30

1  Red Oak in Williamsville and abide by the house detention

2  conditions that are recommended.

3            Thank you, Your Honor.

4            **MAGISTRATE JUDGE SCHROEDER:** You made reference to

5  some lucrative years that Mr. Burgin had in running a

6  collection agency located here in the Western District of

7  New York or in Buffalo.  Can you give me an approximation as

8  to what the receipts of those years were?

9            **MR. BLOTNIK:** Can I have just one minute?

10           **MAGISTRATE JUDGE SCHROEDER:** Yes.

11           **MR. BLOTNIK:** Your Honor, Mr. Burgin doesn't recall

12 specifically, but he recalls at least one year he earned in

13 excess of $300,000 for which he filed taxes and paid the

14 taxes.

15           **MAGISTRATE JUDGE SCHROEDER:** The reason I ask the

16 question, I asked the question for a couple reasons, but the

17 Government has proffered and represented that during the years

18 in question that is depicted in the Power Point, that the

19 total expenditures apparently reported by Mr. Burgin -- or

20 allegedly reported exceeded a million dollars.

21           And the total receipts reported were in the area

22 total of 100 plus thousand dollars.

23           **MR. LYNCH:** Yeah, 108.

24           **MR. BLOTNIK:** Judge, they skipped eight years in

25 between.

1          **MAGISTRATE JUDGE SCHROEDER:** I know, I'm just trying

2   to create a more clear in my mind financial picture.

3          And the second part, the reason for the question

4   would be if I were to determine that Mr. Burgin should be

5   released, setting perhaps a financial figure of bail.

6          **MR. BLOTNIK:** I understand.  Your Honor, one

7   additional fact that I think I overlooked is the properties in

8   question that Mr. Burgin owns are -- have been in his

9   ownership since the '90's.  He has not purchased anything

10  since 2000.

11         **MAGISTRATE JUDGE SCHROEDER:** What properties are

12  those?

13         **MR. BLOTNIK:** All the ones that he owns.

14         **MAGISTRATE JUDGE SCHROEDER:** I know.  I'm asking,

15  which ones are they?

16         **MR. BLOTNIK:** The ones that are listed on the --

17         **MAGISTRATE JUDGE SCHROEDER:** Pretrial Services

18  report?

19         **MR. BLOTNIK:** 239 Stockbridge and 73 Rogers Street.

20  The property where he resides at 79 Brunswick is owned by his

21  parents.  And the other properties mentioned are owned by

22  other family members.

23         **MAGISTRATE JUDGE SCHROEDER:** 56 Grimes?  The

24  Government had referenced that as being --

25         **MR. BLOTNIK:** He does not own 56 Grimes.

1    **MAGISTRATE JUDGE SCHROEDER:** -- his and -- and there

2  being some application pending or involved with the City of

3  Buffalo regarding that property by Mr. Burgin.

4    **MR. BLOTNIK:** He does not own that property.

5    **MAGISTRATE JUDGE SCHROEDER:** Does he have any

6  interest in it?

7    **MR. BLOTNIK:** Pardon me?

8    **MAGISTRATE JUDGE SCHROEDER:** Does he have any

9  interest in it?

10    **MR. BLOTNIK:** All I know, Your Honor, is he does not

11  own it.  He does not have any interest --

12    **MAGISTRATE JUDGE SCHROEDER:** Is there some sort of

13  application pending by him or on his behalf regarding that

14  property?

15    **MR. BLOTNIK:** He does a lot of renovation work and

16  he may have applied for a permit to do some renovation work in

17  that house, but he does not own it, Your Honor.

18    **MAGISTRATE JUDGE SCHROEDER:** All right.

19    Mr. Covert.

20    **MR. COVERT:** Thank you, Your Honor.

21    Your Honor, I share in some of Mr. Blotnik's

22  comments in relation to the Government's presentation here.

23    I know that the Government has -- feels it has a

24  little bit of a burden to overcome here because the Probation,

25  Pretrial Services recommended the release of both

1   Mr. Blotnik's client and my client, but not having -- I don't

2   feel a need to defend the Pretrial Services, but I think that

3   they know exactly what the charges were here and I know this

4   presentation was very good, very well-done, very well thought

5   out with photographs and everything, but I don't think anyone

6   here -- the Court, ourselves or Probation -- saw anything that

7   we didn't imagine we would see in relation to any

8   investigation into a drug distribution allegation.

9            We saw exactly packages of drugs and houses and

10  where they're located and scales, that's just the normal.  I

11  know that the Government feels the need to sort of bring it

12  home to the Court to try to make it look as though Ms. Linton

13  here didn't know what she was talking about when she made this

14  recommendation, but I totally disagree with that.  I think

15  that she knew exactly what she was looking at, she knew

16  exactly what this case would hold.

17           While my client is not charged with being in

18  possession of a drug premises Count 2, or being in possession

19  of any weapons, I'm sure that when those allegations were

20  brought in the complaint and Pretrial Services saw those

21  allegations, they're not surprised to then find out that

22  there's photographs of weapons.  You know, that's exactly what

23  they would have anticipated, that's what we all anticipate.

24           I know that the Government here needs -- feels the

25  need to sort of change the game and reverse the table on this

1   because there's a recommendation that they're not happy with,

2   but it really does not in any way benefit us to look at the

3   photographs and -- and believe that it's something that we

4   didn't anticipate we would see when we saw these -- the

5   presentation that the Government made.

6           The -- the -- and as Mr. Blotnik indicated, we

7   don't even have access to the evidence, we don't know what the

8   additional evidence is that they have, investigation --

9   whether there's any *Brady* material.

10          My client is 32 years old.  He has no criminal

11  record whatsoever.  He is a -- by all accounts, we provided

12  letters to the Court, he is a very loving son to his mother,

13  he is a very loving father to his fiance -- to his three

14  children, he loves his fiance.

15          The family is very supportive of him.  He has a

16  very strong family network that can make sure that if the

17  Court does release him, that there will be no instance of any

18  misconduct on his part and I really don't believe there would

19  be any.

20          We also have members of the community here: His

21  friends, members of his church who are all here in support of

22  him.  And I really almost take offense at one of Mr. Lynch's

23  comments where he said that if the people that wrote these

24  letters knew what he was alleged to have done, then the

25  letters aren't worth the paper that they're written on.

1          That is very offensive.  These are people who've

2    just found out these allegations, nothing's been proven.

3    There have been no findings against either of the defendants.

4    And there has been no conviction of anything.  They're only

5    allegations of people that they love, including my client,

6    that is -- that is their either family member, friend or

7    fellow parishioner at their church, at the First Baptist

8    Church.

9          And for the Government to say and offend these

10   people and say that they -- if they knew what they were being

11   alleged to have done, that -- and they wrote the letter

12   nevertheless, that somehow that diminishes the individuals who

13   wrote the letters and can attest to his character is -- I

14   think that's beneath the comments that should be made in a

15   proceeding like this.

16         My client by all accounts, by these letters and --

17   I'll be honest with the Court, I just met him today, met with

18   his family members today, received these letters.  He seems to

19   be the person that they say he is.

20         By all accounts he is a wonderful young man who is

21   charged for the first time with these types of allegations.

22   He does have driving related offenses in relation to alcohol,

23   but nothing along these lines.

24         He, as I said, has no prior record.  He's not

25   alleged to be in possession of the drug premises at 56 Grimes

1    Street.  He is not alleged to have been in possession of any

2    weapons in relation to these charges.  He's not -- there's

3    nothing that the Government has said that I'm aware of -- and

4    if I'm incorrect, I'll stand corrected -- but I don't believe

5    that Mr. Lynch has in any way tied my client to 69 Bennett

6    Village Terrace or the premises at 79 Brunswick, that there's

7    any indication that there's allegations that he was seen at

8    either of these premises, that he possessed them, that he

9    controlled those premises.

10          There's no allegation that he was ever in

11   possession of any weapons in relation to these offenses

12   whatsoever.  There are no allegations of any violence

13   whatsoever here that I'm aware of reading through the papers

14   that we've been provided and been filed with the Court.

15          There's no allegation that my client ever lived

16   beyond his means.  The Government, as I understand it, does

17   not dispute that my client lived with his mother, but his

18   fiance lives in a different location with their three

19   children.

20          That he is a stay at home dad.  That she's the

21   one -- the fiance is the one who works, he's the one that goes

22   and takes care of the children.  He provides for them, he

23   takes them to and from school, he does all the things that a

24   traditional stay at home dad would do and he does so in a very

25   good fashion as indicated by the letters that we have set

1  forth.

2  He was a very good student athlete.  He was playing

3  professional basketball in Spain.  He was drafted by I believe

4  Arizona?  Basketball team.  And he -- when he was in Spain

5  about seven or eight years ago, he had -- he had an emergency

6  condition, and he was brought back to the United States.

7  It turns out that his body does not make enough

8  salt and that he has a low sodium issue and that also plays

9  into the arguments before this Court because he has to take a

10 lot -- eat a lot of sodium throughout the day because his body

11 does not generate enough.

12 And at the Niagara County Jail where he's been

13 housed they have been trying to assist him with that, but it

14 has not been sufficient their measures, there's not enough

15 they've been providing to him.

16 And, for example, his blood pressure yesterday was

17 approximately 156 over 120, which is an extremely dangerous

18 range to be at.  So that -- that is another reason that we

19 would offer to the Court to allow him to be released.

20 But given the support that he has, the network that

21 he has among his family members, friends, his church, the

22 members of the community who are well aware of why he's

23 charged, the courtroom is full of these people, they're not

24 here because they think that he hasn't been charged with a

25 serious offense.  They know exactly what he's charged with,

1   but they love him, they support him, they will provide for him

2   if the Court is generous enough to allow him to be released.

3          And so I think that given the circumstances that

4   the Court is asked to look at and the nature of the offense,

5   and there is no violence alleged here, there's no allegation

6   that my client was in possession of any weapons.

7          You know, Mr. Lynch said the history and character

8   of the defendants and all he could point to was the current

9   charges.  No other history.  That's -- it's given that the

10  person that is before the Court is charged with the current

11  offense.

12         Is there a history of prior offenses?  There's none

13  whatsoever.  There's no history of violence, no history of

14  possession of weapons, no histories of threats to other

15  individuals.

16         And, you know, the Court will provide that as a

17  condition that he not engage in illegal activity, which would

18  include in drug dealing.  So he's no danger to the community

19  by releasing him because he's not going to do anything wrong.

20         And if he does, I've been before this Court , I

21  know exactly what the Court will do, I already told my client

22  what the Court will do if he violates to the smallest degree

23  any order of this Court, he will be incarcerated quickly by

24  the Court.

25         His family ties, he's from Buffalo, grew up in

1    Buffalo.  Other than leaving when he was playing in Spain and

2    he came back, that's the only time that he has left the

3    country is my understanding.

4             He has three children here.  He has his family

5    here, his friends, his church members, his ties are only to

6    Buffalo.  He's not going anywhere.  There's no threat of him

7    leaving.

8             And as I -- again, he is no danger to the community

9    if the Court releases him.  So I would very respectfully ask

10   that the Court abide by the recommendation of

11   Pretrial Services.

12            **MAGISTRATE JUDGE SCHROEDER:** It's been indicated in

13   the Pretrial Services report, I believe, that the defendant

14   had indicated to the probation officer that his family may be

15   of assistance in raising security for bail.

16            **MR. COVERT:** Yes, they will do whatever the Court

17   likes.  I don't know.  I really apologize, I just got brought

18   into the case.  I don't know what assets they do have, but I

19   think that they would sign any bonds if the Court would want

20   to set -- set a signature bond amount or assist in any way

21   that they could.

22            **MAGISTRATE JUDGE SCHROEDER:** And he lives with his

23   mother?

24            **MR. COVERT:** He does.  And his mother does legally

25   have handguns which she will immediately hand over to someone

1  who is licensed to take the handguns so that they are out of

2  the house.

3             **MAGISTRATE JUDGE SCHROEDER:** I think also there was

4  a reference made to -- or maybe it was Mr. Burgin's sister who

5  had a weapon or a rifle.  All right.

6             **MR. COVERT:** I think that was Mr. Burgin, Your

7  Honor, I believe.

8             **MAGISTRATE JUDGE SCHROEDER:** All right.

9             Mr. Lynch, in your proffer you made representations

10  as to an Internal Revenue Service investigation, and I think

11  you indicated it started or at least occurred back at around

12  2007?

13             **MR. LYNCH:** Correct, Judge.

14             **MAGISTRATE JUDGE SCHROEDER:** Was there ever any

15  action taken either civilly or criminally by IRS?

16             **MR. LYNCH:** I know criminally not, Judge.  Not

17  civilly either.

18             **MR. COVERT:** Your Honor, if I can?  I don't want to

19  divert the Court.  One more point that I left out, which is I

20  know it's as to Mr. Burgin, but the videotape that the

21  Government presented as to Mr. Burgin where these comments

22  were made by him that were allegedly in relation to drug

23  dealing was March of 2017.

24             If these gentlemen were such a danger to the

25  community, then why are we here in February of 2020?  Why

1  weren't they picked up long ago if they're such a danger to

2  the community?  Because the Government had that videotape back

3  in March.  They were clearly conducting an investigation, had

4  a confidential informant.  So it couldn't have been that big

5  of an emergency that we wait, what?  Two and a half years.

6          **MAGISTRATE JUDGE SCHROEDER:** Anything you want to

7  add, Mr. Lynch?

8          **MR. LYNCH:** Judge, I'll rely on the presentation I

9  already made.

10          A couple things.  I don't think the defendants have

11 rebutted the presumption standing alone, but in light of the

12 Government's evidence, Judge, I don't think they've -- I think

13 the Government has still maintained its burden with respect to

14 both risk of flight and danger.

15          I -- with respect to Mr. Burgin, Judge, he clearly

16 has connections to firearms, but I do want to address

17 Mr. Covert's point about the danger -- that his client doesn't

18 pose a danger.

19          Well, that's -- Congress found under the Bail

20 Reform Act that drug dealing does pose a danger to the

21 community.  In fact, Congress found that there was a

22 presumption that applies in cases involving simply drug

23 dealing.  There are presumptions that also apply in gun

24 possession cases.

25          So to say that he doesn't pose a danger I think

1  minimizes what drug dealing does to our community, especially

2  at this scale that Mr. Burgin and Mr. Pierce have been

3  engaging in.

4           The final thing that I want to say is, Judge, both

5  of them have indicated they have family ties, but those family

6  ties, Judge, haven't stopped Mr. Burgin or Mr. Pierce from

7  engaging in criminal activity prior to now.

8           So to think that those family ties will stop them

9  going forward, I don't think should assure the Court that

10  that's, in fact, going to happen.

11          Just the final thing I want to point out, Judge, is

12  Mr. -- it's clear from Mr. Burgin's interview with

13  Pretrial Services that he wasn't completely honest regarding

14  his finances at all based on the information that's been

15  presented to the Court.

16          It simply demonstrates that Mr. Burgin has been

17  involved in drug dealing for more than a decade.  He has

18  reaped the benefits of that drug dealing by virtue of his

19  spending, by virtue of purchasing certain properties and

20  demonstrated by the sheer money that was found inside the

21  residences that are, in fact, either owned by Mr. Burgin or he

22  apparently has a great interest in.

23          In fact, he had keys to 56 Grimes, so he's got an

24  interest in 56 Grimes.  They opened up 56 Grimes with his key.

25  So, you know, I think the fact whose name it is, you know, I

1   don't think that really tells us much.  I think possession of

2   it is very important.

3           And Mr. Burgin, based on the zoning board records,

4   based on his observations of him being outside 56 Grimes on

5   February 19th, as well as the other information that the

6   Government's proffered, we would ask that both defendants be

7   detained.

8           **MAGISTRATE JUDGE SCHROEDER:** In considering the

9   Government's motion to have each of the defendants detained,

10  it is my obligation to take into account all of the

11  information made known to the Court and consider all of the

12  facts and circumstances as made known in their totality.

13          And as part of that process the Government has also

14  put forth its reliance on the presumption created by Congress

15  in the Bail Reform Act of 1984 as amended.

16          And that is the presumption of dangerousness by

17  reason of the charges against the defendants herein, namely,

18  alleged drug transactions, drug dealing, drug distribution,

19  conspiracy to violate the drug laws.  However, I point out

20  that that presumption is a rebuttable presumption.

21          There is also another presumption that the Court

22  must take into consideration and that is a constitutional

23  presumption and that is the presumption of innocence to which

24  each defendant is entitled.  And that same presumption is also

25  iterated in the Bail Reform Act of 1984 as well.

1          So we are basically dealing with two presumptions:
2    The one relied on by the Government in the Bail Reform Act,
3    which is the statutory presumption; and the one to which each
4    defendant is automatically entitled to under the Constitution
5    of the United States.

6          And when I weigh the presumptions -- a
7    constitutional presumption against a statutory presumption --
8    it is my opinion both legally and justiciable that the
9    constitutional presumption is a much weightier, a much more
10   impressive presumption.

11         The presentation and the proffer put forth by the
12   Government is a substantial one, at least as to what has been
13   alleged to as having been recovered in the recent searches
14   conducted pursuant to search warrants and disclosures obtained
15   by way of apparently either Title III orders or other types of
16   investigatory tools.

17         But, once again, we still have the presumption of
18   innocence to which each defendant is entitled and that
19   presumption remains with each defendant until such time as
20   they are found guilty beyond a reasonable doubt after a trial
21   based on legally competent evidence.

22         I do have concern as to the foundation which the
23   Government is relying on to support its motion in addition to
24   the presumption and that is the so-called history that was
25   proffered.  And what causes my concern was briefly addressed

1    by defense counsel and it's something that I find in a number

2    of cases that come before this Court, but most specifically

3    and particularly in drug cases and child pornography cases,

4    and that is the claim by the Government that the defendant

5    charged constitutes a danger and must be detained, but yet

6    more often than not the Government is aware of the activity

7    for long periods of time before it takes any action, which

8    causes me intellectual honesty concerns.

9              That if the Government is aware of somebody

10   conducting activity that it says is now dangerous which

11   warrants immediate removal of that person's freedom, why

12   wasn't that done as defense counsel indicated when it first

13   became known?

14             In this particular case the proffer indicates that

15   the investigations with respect to each defendant are of a

16   number of years duration, and during that number of years the

17   defendants apparently were at liberty and were going on about

18   whatever they were going on about.

19             So that so-called pressure of immediate action

20   really isn't there when you consider it in that context of

21   this activity allegedly having occurred over a lengthy period

22   of time.

23             Also the Government makes reference to IRS

24   investigations, large volumes of cash, but yet as the

25   Government has now acknowledged, no IRS action was ever taken

1  against the defendants, especially Burgin, either civilly for

2  taxes -- for collection of taxes or criminally for fraudulent

3  tax violations.

4       And so, quite frankly, the Government's inaction as

5  to these so-called serious events causes me to conclude that

6  the presumption really has been rebutted by the Government's

7  own inaction.

8       If the defendants were so dangerous, the Government

9  should have taken action.  If the defendant Burgin was so

10  violative of the tax laws, IRS and the Government should have

11  prosecuted or at least civilly undertaken steps to collect

12  those tax dollars.  Neither of which occurred.

13       And so I say to myself how can I intellectually say

14  then these defendants are such a danger or are such habitants

15  of illegal conduct that there are no terms and conditions that

16  I could reasonably impose to assure the safety of the

17  community or to uphold the principles of the Constitution,

18  especially the principle of presumption of innocence.

19       Bail is not meant to be a punitive tool.  Bail is a

20  constitutional right to what every defendant charged with a

21  crime is entitled to be considered for .

22       I also take into account the Pretrial Services

23  report as to each defendant and the experience of each of the

24  probation officers preparing those reports.

25       Both defendants appear to have no criminal records

1  of any substance.  There are convictions for DUI or DWI by the

2  defendant Pierce back in 2013 and 2019, but other than that he

3  has no reported criminal convictions.

4         As to the defendant Burgin, the Pretrial Services

5  report shows no criminal convictions of any nature.

6         This Court has had a number of drug cases involving

7  defendants with substantial criminal records where the

8  Government has had no objection to their release.

9         And so when I consider, once again, the

10  circumstances and the facts made known in this case in their

11  totality, coupled with the presumption of innocence, I've

12  heard nothing that really indicates to me even by a scintilla

13  of evidence as to the risk of flight because there are steps I

14  can take to minimize any risk of flight.

15        Once again, as to dangerousness to the community,

16  that burden is one of clear and convincing evidence and

17  apparently the Government didn't think there was clear and

18  convincing evidence of dangerousness when it became aware of

19  the alleged conduct that it says is now dangerous back in

20  2017, 2018, 2019.

21        So having said all of that, having evaluated all of

22  that and having considered all of that in its totality, I find

23  that there are terms and conditions that I can impose that

24  will reasonably assure the appearance of each defendant at any

25  future proceedings and that will reasonably assure the safety

1   of the community.

2           And, therefore, I am releasing the defendant David

3   Burgin under the following terms and conditions:

4           The defendant will be required to post security in

5   the amount of $100,000 cash or property having equal value of

6   that free and clear of any liens or incumbrances.

7           The defendant's travel is hereby restricted to the

8   Western District of New York.

9           The defendant will surrender any and all passports,

10  enhanced driver's licenses or any other form of documentation

11  that would enable him to travel internationally.

12          And while this matter is pending, the defendant is

13  not to attempt to renew any passports, enhanced driver's

14  licenses or any other form of international travel document,

15  and he is not to apply for any new passports, enhanced

16  driver's licenses, or any other form of document that would

17  permit international travel.

18          The defendant is hereby required to refrain from

19  excessive use of alcohol.

20          The defendant is not to have in his possession and

21  he is not to use any narcotic drug or substance, even if it's

22  considered legal under the laws of the United States, unless

23  that legal drug or substance is in the form of medicine that

24  has been duly prescribed for him personally by a duly licensed

25  physician to treat him personally for a medical condition.

1          So even though it might be considered a legal drug

2    or substance under the laws of the United States, if it's not

3    in the form of medicine prescribed for you personally to treat

4    you for a medical condition, you are not to have it in your

5    possession and you are not to use it, Mr. Burgin.

6          Do you understand?

7          **DEFENDANT BURGIN:** Yes, yes, sir.

8          **MAGISTRATE JUDGE SCHROEDER:** Needless to say, but

9    nevertheless necessary to say, you are not to have in your

10   possession and you are not to use any illegal drug or

11   substance.

12         You will also be required to submit to drug and/or

13   alcohol testing as determined and directed by the

14   U.S. Probation Office, and you will be required to contribute

15   towards the cost of that service in the form of a co-payment,

16   the amount of which will be determined and directed by the

17   U.S. Probation Office.

18         You're also prohibited from obstructing or

19   attempting to obstruct or tamper with in any fashion the

20   efficiency or accuracy of any prohibited substance testing

21   carried out.

22         You will be required to remain at a verifiable

23   address as approved by Pretrial Services and you will be

24   subject to electronic monitoring on home incarceration, which

25   means you will not be allowed to leave the residence unless

1  you have received permission from the U.S. Probation Office to

2  do so for purposes of either seeking medical attention or some

3  emergency situation.

4         And you will be required to contribute towards the

5  cost of that electronic monitoring in the form of a

6  co-payment, the amount of which will be determined by the

7  U.S. Probation Office.

8         You are to avoid all contact with the co-defendant

9  in this case as well as any other defendants in related cases,

10 such as we've heard Mr. David Washington and the co-defendants

11 listed in the indictment in which Mr. Washington is charged.

12        If there is need for contact or any type of

13 information gathering or investigation to be carried out, you

14 must do that through your attorney Mr. Blotnik, and

15 Mr. Blotnik will explain that to you.  There's to be no

16 contact directly or indirectly by you with any of the

17 defendants in the Washington case or with the co-defendant

18 Pierce.

19        You are hereby made subject to the supervision and

20 authority of the United States Probation Office.  And what

21 that means is you must carry out and follow through and obey

22 every reasonable directive given to you by a representative of

23 that office.

24        Should you fail to do that or should you fail to

25 comply with any of the terms and conditions that I have just

1  imposed, that can result in your bail being revoked and you're

2  being locked up and kept locked up until this matter is

3  completed.

4          Do you understand?

5          **DEFENDANT BURGIN:** Yes, Your Honor.

6          **MAGISTRATE JUDGE SCHROEDER:** It's also my

7  understanding that there may be some active Orders of

8  Protection that have been issued by state courts of the State

9  of New York.

10          If that is the case, you are also obligated to

11  abide by and obey all of those orders and the terms and

12  conditions set forth in those orders.  And should you fail to

13  do that that, too, can be considered a violation of the terms

14  and conditions of this bail and that can result in this bail

15  being revoked and you're being locked up and kept locked up

16  until this matter is completed.

17          Do you understand?

18          **DEFENDANT BURGIN:** Yes, Your Honor.

19          **MAGISTRATE JUDGE SCHROEDER:** Upon the posting of the

20  $100,000 security as well as a determination by the

21  U.S. Probation Office as to the feasibility for electronic

22  monitoring in the designated approved residence of the

23  defendant, the defendant David Burgin is released subject to

24  the terms and conditions as I've stated them to be.

25          **MR. LYNCH:** Judge, the Government would ask for a

1    one week stay to perfect an appeal to Judge Arcara regarding

2    Mr. Burgin's release conditions.

3              **MAGISTRATE JUDGE SCHROEDER:** When is Mr. Arcara due

4    back in the district, do you know?

5              **MR. LYNCH:** I'm not sure, Judge.  But Judge Arcara

6    requires a transcript so we're going to have to get a

7    transcript obtained.

8              **MAGISTRATE JUDGE SCHROEDER:** All right, I'm going to

9    grant that application.

10             **MR. BLOTNIK:** One week stay?

11             **MAGISTRATE JUDGE SCHROEDER:** One week stay.  So that

12   stay will be in effect until March the 2nd, 2020.

13             As to the defendant Rodney Pierce, I'm going to

14   release the defendant subject to the following terms and

15   conditions:

16             The defendant is to post bail security in the

17   amount of $10,000 either cash or property having equal value

18   to that free and clear of any liens or incumbrances.

19             The defendant is hereby made subject to the

20   supervision and authority of the United States

21   Probation Office.

22             And what that means, Mr. Pierce, is you must obey

23   and carry out and follow through with every reasonable

24   directive given to you by a representative of that office.

25   Should you fail to do so, that can result in your bail being

1 revoked and your being locked up and kept locked up until this
2 matter is completed.

3          You are hereby required to surrender any passports
4 or passport cards, enhanced driver's licenses, or any other
5 form of documentation that enables one to travel
6 internationally.

7          And while this matter is pending you are not to
8 seek renewal of any passports or enhanced driver's licenses or
9 any other form of documentation that would allow for travel
10 internationally.

11          And you are not to apply for any new passports or
12 enhanced driver's licenses or any other form of documentation
13 that would allow for international travel.

14          Let me back up as to Mr. Burgin as well.  I'm also
15 imposing for Mr. Burgin a prohibition, he is not to have
16 possession of or access to any firearms or destructive
17 devices.

18          And should he have such possession or access, he
19 must make that known to you, Mr. Blotnik, and I direct you as
20 an officer of the court to then confer with counsel for the
21 Government so that appropriate arrangements can be made for
22 the safekeeping of same.

23          As to the defendant Pierce, he is hereby prohibited
24 from possessing or having access to any firearms or dangerous
25 or destructive devices.

1          And if he does have such possession or access, he

2 must make that known to you, Mr. Covert, and I direct you as

3 an officer of the court to then confer with counsel for the

4 Government for the surrender and safekeeping of same while

5 this matter is pending.

6          The defendant Pierce is hereby prohibited from

7 having possession of or using any narcotic drug or substance,

8 even if it's considered legal under the laws of the United

9 States, unless that legal drug or substance is in the form of

10 medicine that has been prescribed for you personally by a duly

11 licensed physician licensed by the State of New York to treat

12 you personally for a medical condition.

13          So even though it might be considered a legal drug

14 or substance, you are not to have it in your possession and

15 you are not to use it unless it is in the form of medicine

16 prescribed for you by a doctor to treat you for a medical

17 condition.

18          Do you understand?

19          **DEFENDANT PIERCE:** Yes, Judge.

20          **MAGISTRATE JUDGE SCHROEDER:** You are hereby

21 prohibited, and needless to say, from having in your

22 possession or using any illegal drug or substance.

23          And you will be required to submit to drug and/or

24 alcohol testing and/or treatment for same as determined by the

25 U.S. Probation Office.  And you will be required to contribute

1  towards the cost of that service in the form of a co-payment

2  the amount of which will be determined by the

3  U.S. Probation Office.

4           You are hereby prohibited from obstructing or

5  attempting to obstruct or tamper with in any fashion the

6  efficiency and accuracy of any substance testing that is

7  carried out.

8           You will also be required to report any contact you

9  have with any law enforcement personnel for any reason

10 whatsoever, be it something as minor as a vehicle and traffic

11 stop or for any other reason.  And that report must be made

12 within 72 hours after the contact has occurred and it must be

13 made to the United States Probation Office.

14          You are not to have any contact either directly or

15 indirectly with the co-defendant in this case or with any

16 other defendant in a related case, such as the case involving

17 David Washington and the co-defendants in that case.

18          If there need to be such contact or information

19 acquired or investigation conducted, you must do that through

20 your attorney and your attorney Mr. Covert will then address

21 the matter as he deems appropriate.

22          You are hereby made subject to the supervision and

23 authority of the United States Probation Office, which means

24 you must obey and carry out and follow through with every

25 reasonable directive given to you by a representative of that

1   office.

2           Should you fail to do that, that can result in your

3   bail being revoked and your being locked up and kept locked up

4   until this matter is completed.

5           Do you understand?

6           **DEFENDANT PIERCE:** Yes, Judge.

7           **MAGISTRATE JUDGE SCHROEDER:** Further, should you

8   violate any one of the terms and conditions that I have

9   imposed here, that can also constitute a reason for revoking

10   your bail and having you locked up and kept locked up until

11   this matter is completed.

12           Do you understand?

13           **DEFENDANT PIERCE:** Yes, Judge.

14           **MS. LINTON:** Your Honor, if I may?

15           **MAGISTRATE JUDGE SCHROEDER:** Yes.

16           **MS. LINTON:** Given his two prior DWAI convictions

17   and current treatment for an alcohol disorder, I would ask

18   that he refrain from any use of alcohol.

19           **MAGISTRATE JUDGE SCHROEDER:** Yes, you are hereby

20   prohibited from drinking alcohol of any amount.  That means no

21   drinking whatsoever.

22           And if you should be found to have engaged or

23   imbibed in alcohol, especially by way of the testing, that

24   will automatically result in your bail being revoked and your

25   being locked up and kept locked up.

1          Do you understand?

2          **DEFENDANT PIERCE:** Yes, Judge.

3          **MAGISTRATE JUDGE SCHROEDER:** I'm using zero

4  tolerance on the alcohol consumption and on the drug use.

5          Do you understand?

6          **DEFENDANT PIERCE:** Yes, Judge.

7          **MAGISTRATE JUDGE SCHROEDER:** Upon the posting of the

8  security in the amount of $10,000 as I've indicated as well as

9  any additional processing by either the U.S. Marshal's Service

10 and/or the U.S. Probation Office, the defendant is -- also, if

11 you have a passport or any form of international travel

12 documents, they are to be surrendered immediately.

13         And then upon completion of that processing by the

14 U.S. Marshal's Service and/or the U.S. Probation Office, the

15 defendant Pierce upon the posting of the $10,000 security is

16 to be released subject to all of the terms and conditions as I

17 have stated them to be.

18         **MR. LYNCH:** Nothing, Judge.

19         **MAGISTRATE JUDGE SCHROEDER:** Now, as to a

20 preliminary hearing, Mr. Covert and Mr. Blotnik --

21         **MR. BLOTNIK:** We waive a hearing.

22         **MAGISTRATE JUDGE SCHROEDER:** -- does the defendant

23 Burgin waive his right to a preliminary hearing?

24         **MR. BLOTNIK:** He does, Your Honor.

25         **MAGISTRATE JUDGE SCHROEDER:** Does the defendant

1  Pierce waive his right to a preliminary hearing?

2          **MR. COVERT:** He does, Your Honor.

3          **MAGISTRATE JUDGE SCHROEDER:** Thank you.  There's

4  nothing further then jurisdictionally for this Court to do at

5  this time.

6          **MR. LYNCH:** Thank you, Judge.

7          **MR. BLOTNIK:** Thank you, Your Honor.

8          **MAGISTRATE JUDGE SCHROEDER:** Thank you.

9          (**WHEREUPON**, proceedings adjourned at 4:32 p.m.)

10                        *    *    *

11              **CERTIFICATE OF TRANSCRIBER**

12

13          In accordance with 28, U.S.C., 753(b), I certify that

14  this is a true and correct record of proceedings from the

15  official electronic sound recording of the proceedings in the

16  United States District Court for the Western District of New

17  York before the Honorable H. Kenneth Schroeder, Jr. on

18  February 24th, 2020.

19

20  S/ Christi A. Macri

21  Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
    Official Court Reporter

22

23

24

25